**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 21-20060-JAR** |
| **KAABA MAJEED,** | |
| **YUNUS RASSOUL, a.k.a. Yunus Rassoull,** | |
| **JAMES STATON, a.k.a. ADAM WINTHROP** | |
| **RANDOLPH RODNEY HADLEY,** | |
| **DANIEL AUBREY JENKINS,** | |
| **DANA PEACH,** | |
| **ETENIA KINARD, a.k.a. Etenia Kinnard, and** | |
| **JACELYN GREENWELL,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

The Government filed an eight-count Indictment on October 20, 2021, against eight

Defendants: Kaaba Majeed, Yunus Rassoul a.k.a. Yunus Rassoull, James Staton a.k.a. Adam

Winthrop, Randolph Rodney Hadley, Daniel Aubrey Jenkins, Dana Peach, Etenia Kinard a.k.a.

Etenia Kinnard, and Jacelyn Greenwell.[1]  Count 1 alleges a claim against all Defendants for

conspiracy to commit forced labor in violation of 18 U.S.C. §§ 371 and 1589.  Counts 2 through

8 allege substantive forced labor violations under 18 U.S.C. §§ 1589, 1594(a), and 2.  Each

substantive forced labor count is based on a different victim, and is alleged against different

subgroups of Defendants.

Defendants in this matter filed myriad pretrial motions, most but not all of which seek

dismissal of the Indictment.  The Court has endeavored to group these motions for purposes of

---

[1] Doc. 1.

ruling.  In this Memorandum and Order, the Court considers motions relating to Defendants'

statute-of-limitations defense, the motion to dismiss based on duplicity, and the motion to sever.

The motions addressing the statute-of-limitations defense are: Defendant Majeed's Motion to

Dismiss Complaint/Case or in the Alternative for a Bill of Particulars (Doc. 122);[2] Defendant

Rassoul's Motion to Dismiss Indictment for Failure to Prosecute Within the Statute of

Limitations (Doc. 157);[3] Defendant Staton's Motion to Dismiss Indictment as Time-Barred, or in

the Alternative, for a Bill of Particulars (Doc. 163);[4] Defendant Hadley's Motion to Dismiss

Indictment as Time-Barred (Doc. 153); Defendant Aubrey Jenkins' Motion to Dismiss

Indictment for Impermissible Federalization of a State Crime, for violation of Statute of

Limitations, and Motion for Bill of Particulars (Doc. 161);[5] and Defendant Peach's Motion to

Dismiss Indictment and for Bill of Particulars (Doc. 167).[6]  The Government separately

responded to the motions to dismiss and the motions for bill of particulars (Docs. 185, 186);

Aubrey Jenkins filed replies (Docs. 195, 196), and the Government filed a surreply to Aubrey

Jenkins' reply (Doc. 199).

     Also before the Court is Defendant Staton's Motion to Dismiss as Duplicitous (Doc.

160),[7] and Defendant Majeed's Motion to Sever (Doc. 121).[8]  They are fully briefed.

---

[2] This motion is joined by Defendants Hadley, Jenkins, Greenwell, and Staton.

[3] This motion is joined by Defendants Majeed, Hadley, Jenkins, Staton, and Greenwell.

[4] This motion is joined by Defendants Majeed, Hadley, Jenkins, and Greenwell.

[5] This motion is joined by Defendants Majeed, Staton, and Hadley.  The Court will only address the statute-of-limitations issue raised by Aubrey Jenkins' motion.  The Court issues a separate Memorandum and Order ruling on his constitutional challenges to the forced labor statute, including his argument that the statute impermissibly federalizes a state crime.

[6] This motion is joined by Defendants Hadley and Staton.

[7] This motion is joined by Defendants Majeed, Rassoul, Hadley, Jenkins, and Greenwell.

[8] This motion is joined by Defendants Staton and Hadley.

The Court conducted a hearing on these motions on June 26, 2023, during which the parties argued the motions and Defendants presented evidence.  The Court has fully considered the briefs and the record presented at the hearing, and is prepared to rule.  As described more fully below, the Court denies all of Defendants' motions to dismiss addressed in this Memorandum and Order.  The Court grants in part the motions for bill of particulars insofar as they request dates of birth for all victims identified in Counts 2 through 8 of the Indictment.  Finally, the Court denies the motion to sever.

## I.    Factual Background

The following highly summarized facts are alleged in the Indictment and assumed to be true for purposes of deciding the motions to dismiss.

United Nation of Islam ("UNOI") was an organization that was founded by unindicted co-conspirator Royall Jenkins.[9]  Royall Jenkins represented that he, himself, was Allah, or God, and claimed that in approximately 1978, he was abducted by angels who transported him through the galaxy in a spaceship and instructed him how to rule on Earth.  Royall Jenkins eventually established UNOI headquarters in Kansas City, Kansas in the late 1990s, where the organization continued to grow in membership.  Royall Jenkins led UNOI until approximately 2012.  His responsibility was to oversee all activities of UNOI and approve all decisions after consultation with his wives and officials, who assisted him in managing UNOI operations.  Royall Jenkins created, drove, and asserted UNOI principles, which included rules that members had to follow, required "duty" or unpaid labor, and emphasized the eternal consequences of noncompliance.

UNOI operated locations or "temples" in various cities around the United States, including but not limited to Kansas City, Kansas; New York, New York; Cincinnati, Ohio;

---

[9] Royall Jenkins died approximately one month before the Indictment in this matter was filed.

Atlanta, Georgia; Raleigh, North Carolina; and Newark, New Jersey.  UNOI had a national and local organizational structure.  Nationally, there was a Secretary, Lieutenant, and Minister, as well as other specialized positions, such as a leader who oversaw the youth or men.  Local leadership of each individual "temple" generally mirrored the national leadership structure, such that each individual "temple" had a local Secretary, Lieutenant, and Minister, as well as a position referred to as Captain.  Royall Jenkins appointed these officials.

Defendant James Staton helped grow the organization and became National Secretary. Defendant Kaaba Majeed became National Lieutenant; Defendant Yunus Rassoul became National Minister; Defendant Randolph Rodney Hadley became a Captain; and Defendant Aubrey Jenkins oversaw the male membership.  Defendants Etenia Kinard, Dana Peach, and Jacelyn Greenwell were three of Royall Jenkins' many wives.  Kinard and Greenwell oversaw the youth membership.  Defendants all assisted Royall Jenkins in managing the organization.

UNOI enticed members to send their children to Kansas City, Kansas, with promises of education and opportunity, but instead the children were forced to work extended hours at UNOI businesses without pay and received no legitimate education.  Each UNOI business had a manager, and each house or dormitory had an adult member in charge.  The members at each "temple" reported to the business and house managers. These managers then reported to local officials, such as the First Lieutenant or Captain, or sometimes directly to national officials such as the National Lieutenant.

Defendants helped enforce UNOI's strict rules—meals were limited, communications with families and non-members were controlled, minor victims were not allowed to seek outside medical attention, and minor victims were required to work long hours at UNOI businesses, sometimes sixteen-hour days.  There were consequences for children who did not comply with

the rules, including withholding food, silence, extra "duty" (i.e., work), as well as psychological and physical abuse.  The physical abuse included hitting victims with a paddle, among other actions.  Defendants instilled in the victims a culture of fear.  They convinced the victims that if they did not comply with the rules, including performing their duty, or if they left UNOI, they would burn in an "eternal hellfire" or experience tragedy.

Defendants benefited from the unpaid labor of the minor victims at UNOI businesses. While the children lived in crowded conditions, followed a strict diet, and worked long hours, Defendants and their families lived in spacious accommodations, ate what they wanted, and worked at their own discretion.

Count 1 of the Indictment charges all Defendants with participating in a forced labor conspiracy that began on or about October 28, 2000 and continued through November 30, 2012. The Indictment alleges numerous overt acts that were committed in furtherance of the conspiracy during this timeframe, some of which included physical abuse.

Counts 2 through 8 charge certain defendants with committing and/or aiding and abetting substantive forced labor violations with respect to seven individual victims.  According to the Indictment:

> 64.  Beginning on or about the dates listed below, and continuing through on or about the corresponding dates indicated below, in the District of Kansas and elsewhere, the below-named defendants, and others known and unknown to the Grand Jury, aiding and abetting each other and others, did knowingly provide and obtain the labor and services of the victims referenced in each respective count below, whose identities are known to the grand jury, by threats of serious harm to, and physical restraint against, that person and another person; by means of any scheme, plan, and pattern intended to cause the person to believe that, if the person did not perform such labor and services, that person and another person would suffer serious harm and physical restraint; and by

> means of the abuse and threatened abuse of law and the legal
> process, and attempted to do so.[10]

This language is followed by a table listing each count, the victim associated with it, the

Defendants charged, and the date ranges that apply.

## II.    Motions to Dismiss Indictment

### A.    Standards

Defendants move to dismiss under Fed. R. Crim. P. 12(b) as to all counts based on the

statute of limitations and duplicity.  Subsection 12(b)(3) governs motions to dismiss that must be

raised before trial, including where there is a defect in instituting the prosecution or a defect in

the indictment.  "An indictment is sufficient if it sets forth the elements of the offense charged,

puts the defendant on fair notice of the charges against which he must defend, and enables the

defendant to assert a double jeopardy defense."[11]  If these three standards are met, then the

indictment "need not go further and allege in detail the factual proof that will be relied upon to

support the charges."[12]  Importantly, Rule 12(b)(1) authorizes the district court to resolve before

trial only those motions "that the court can determine *without a trial of the merits.*"[13]

Accordingly, "[i]f contested facts surrounding the commission of the offense would be of *any*

assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition

before trial."[14]

---

[10] Doc. 1 ¶ 64.

[11] *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006) (quoting *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997)).

[12] *United States v. Doe*, 572 F.3d 1162, 1173–74 (10th Cir. 2009) (quoting *United States v. Redcorn*, 528 F.3d 727, 733 (10th Cir. 2008)); *United States v. Kemp & Assocs., Inc.*, 907 F.3d 1264, 1270 (10th Cir. 2018) (quoting *United States v. Qayyum*, 451 F.3d 1214, 1218 (10th Cir. 2006)).

[13] Fed. R. Civ. P. 12(b)(1) (emphasis added).

[14] *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (emphasis in original).

To that end, "a court generally is bound by the factual allegations contained within the four corners of the indictment" when ruling on a pretrial motion claiming a defect in an indictment for failure to state an offense.[15]  Although a court can in certain limited circumstances "resort to facts outside the indictment that bear on the merits of the case, such "extra-indictment evidence . . . must be undisputed in the sense that it is *agreed* to by the parties."[16]  In other words, if either party "expresse[s] any objection to its consideration or any objection to its completeness and accuracy," a court is constrained to the allegations in the indictment.[17]  As the Tenth Circuit has explained, "unlike their civil counterparts, criminal proceedings have no extensive discovery and summary judgment procedures requiring both sides to lay their evidentiary cards on the table before trial."[18]  "Challenging an indictment is not a means of testing the strength or weaknesses of the government's case, or the sufficiency of the government's evidence."[19]  Rather, "[a]n indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true."[20]

### B.    Statute of Limitations

Defendants move to dismiss on the basis that the charges against them are barred by the statute of limitations.  Under 18 U.S.C. § 3298, a ten-year statute of limitations applies to offenses, or conspiracy to commit offenses, under the forced labor statute, 18 U.S.C. § 1589.[21]

---

[15] *United States v. Welch*, 327 F.3d 1081, 1090 (10th Cir. 2003).

[16] *Pope*, 613 F.3d at 1260–61

[17] *Id.* at 1261.

[18] *Id.* at 1259–60.

[19] *Id.* (citing *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994)).

[20] *Id.*; *see also United States v. Sampson*, 371 U.S. 75, 78–79 (1962) (finding it irrelevant that charges had not been established by evidence, because on a motion to dismiss "the indictment must be tested by its sufficiency to charge an offense.").

[21] The Court rejects Aubrey Jenkins' argument that the general five-year statute of limitations under 18 U.S.C.    § 3282 applies.  Under § 3282(a), the five-year statute of limitations applies "except as otherwise expressly provided by law."  Under the plain language of § 3298, a ten-year statute of limitations applies to

However, an exception may apply under 18 U.S.C. § 3283: "No statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse, or kidnaping, of a child under the age of 18 years shall preclude such prosecution during the life of the child, or for ten years after the offense, whichever is longer."

The Indictment was filed on October 20, 2021. Count 1 alleges that the conspiracy to commit forced labor occurred on or about October 28, 2000, and continued through November 30, 2012. The substantive forced labor counts are alleged to have occurred during date ranges that are either the same or within the same period as the conspiracy. Therefore, if the ten-year statute of limitations applies, the Indictment is time-barred for any offenses that expired before October 20, 2011. If § 3283 applies, the charging period is longer and the claims would be timely if they occurred during the life of the minor victim involved in the offense.

The Government argues that the lifetime statute of limitations applies in this case as to all counts except Count 5.[22] Nonetheless, it contends that the allegations in the Indictment render the charges timely under the ten-year statute of limitations so the Court need not resort to determining whether § 3283 applies. Defendants maintain that the claims are all untimely under the ten-year statute of limitations, and that the exception in § 3283 does not apply to the facts of this case.

The Court must begin by determining when the offenses charged in the Indictment began to run. The general rule is that statutes of limitation "begin to run when the crime is complete."[23]

---

"conspiracy to commit a non-capital offense under . . . section 1589 (Forced Labor)." Because a ten-year statute of limitations is expressly provided by § 3298, the five-year limitations period in § 3282 does not apply.

[22] The Government concedes that the victim identified in Count 5 was not a minor.

[23] *Toussie v. United States*, 397 U.S. 112, 115 (1970) (quoting *Pendergast v. United States*, 317 U.S. 412, 418, (1943)).

And "[a] crime is complete as soon as every element in the crime occurs."[24]  But if the offense is a continuing one, the statute of limitations does not accrue until the conduct has run its course.[25] The Supreme Court has explained that "the doctrine of continuing offenses should be applied in only limited circumstances . . . .  [S]uch a result should not be reached unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one."[26]  Nonetheless, as one district court has observed: "narrowly applying the continuing offense doctrine does not mean that courts can never find continuing offenses.  In fact, the Supreme Court, circuit courts, and courts in this district have all found offenses to be continuing for statute-of-limitations purposes."[27]

### 1.    Conspiracy

The Tenth Circuit has stated that a conspiracy "is the prototypical continuing offense."[28] If the charged conspiracy requires an overt act, "the statute of limitations on a continuing conspiracy does not begin to run until the last overt act in furtherance of the conspiracy is committed."[29]  The Court easily finds that Count 1 is a continuing offense.  Under the continuing offense doctrine, the Court only needs to find that the last overt act in furtherance of the conspiracy was committed within that limitations period.[30]  Paragraphs 53–63 of the Indictment

---

[24] *United States v. Reitmeyer*, 356 F.3d 1313, 1317 (10th Cir. 2004).

[25] *United States v. Dunne*, 324 F.3d 1158, 1164 (10th Cir. 2003) (quoting *United States v. Rivera-Ventura*, 72 F.3d 277, 281 (2d Cir. 1995)).

[26] *Toussie*, 397 U.S. at 115.

[27] *United States v. Wellington*, – F. Supp. 3d –, 2022 WL 17957451, at *3 (D.N.M. Dec. 27, 2022) (collecting cases).

[28] *United States v. Jaynes*, 75 F.3d 1493, 1505 (10th Cir. 1996).

[29] *Id.*

[30] *See id.*

allege overt acts that extended beyond October 20, 2011 into 2012. Therefore, on the face of the Indictment, the Government has sufficiently alleged that overt acts in furtherance of the conspiracy occurred within the ten-year statute of limitations. Accordingly, the Court need not consider whether the limitations period is extended by § 3283 as to Count 1, because the Government's conspiracy charge is timely under the shorter, ten-year statute of limitations.

Some Defendants assert that they withdrew from the conspiracy before the statute of limitations expired. A defendant's withdrawal from the conspiracy will start the statute of limitations running as to that defendant; therefore, if a defendant could establish withdrawal outside the limitations period, the conspiracy charge would be untimely.[31] It is "a complete defense when the withdrawal occurs beyond the applicable statute-of-limitations period."[32]

Majeed and Rassoul submit affidavits stating that they withdrew from the conspiracy before the statute began to run.[33] And Defendants heavily rely on FBI summaries of witness statements to support their withdrawal arguments.[34] Hadley put on evidence at the hearing demonstrating that he was renting his own home in Atlanta, Georgia from his uncle in 2011 through 2013, and that he was actively applying for other jobs during that time.[35] But the Indictment, on its face, contains allegations that each of these Defendants remained part of the conspiracy past October 20, 2011. And Defendants point the Court to no legal authority for the proposition that it may consider evidence on a pretrial motion to dismiss without the consent of

---

[31] *Smith v. United States*, 568 U.S. 106, 112 (2013); *United States v. Dyer*, No. CR-22-00209-JD, 2023 WL 1998904, at *4 (W.D. Okla. Feb. 12, 2023) (citing *United States v. Fishman*, 645 F.3d 1175, 1191, 1196 (10th Cir. 2011)).

[32] *Smith*, 568 U.S. at 112.

[33] Majeed Ex. A; Rassoul Ex. D203.

[34] *See* Rassoul Exs. D205–D207, D209–D218; Peach D06-01, D06-02.

[35] Hadley Ex. A.

the Government.  Here, the Government vehemently objected to the Court considering this evidence.  Thus, even if a ten-year statute of limitations applies, there are sufficient facts alleged in the Indictment to support Defendants' continued membership in the conspiracy at this stage.

To be sure, the Government "must prove the time of the conspiracy offense if a statute-of-limitations defense is raised, . . . [but] the burden of establishing . . . withdrawal rests upon the defendant."[36]  The parties may submit evidence in support of these respective burdens at trial, but based on the allegations in the Indictment, the Court cannot conclude as a pretrial matter that any Defendant withdrew from the conspiracy before October 20, 2011.

### 2.    Substantive Forced Labor Counts

Counts 2 through 8 are less straightforward.  The forced labor statute does not explicitly provide that the offense is a continuing one.  And there is no caselaw in the Tenth Circuit explicitly holding that forced labor is a continuing offense.  One district court outside the Tenth Circuit has held that forced labor is a continuing offense in a conclusory ruling.[37]  And the Government cites two out-of-circuit district court cases holding that the sex-trafficking statute, 18 U.S.C. § 1591, found in the same title, is a continuing offense.[38]

The Court is guided by the Tenth Circuit's statute-of-limitations accrual analysis in *United States v. Reitmeyer*.[39]  There, the court explained that the first step is to determine what constitutes an offense under the applicable statute.[40]  In *Reitmeyer*, the statute before the court

---

[36] *Smith*, 568 U.S. at 113.

[37] *United States v. Bello*, No. 10-cr-397, 2011 WL 855375, at *1 (N.D. Ga. Mar. 9, 2011).

[38] *United States v. Webster*, No. 06-0096, 2007 WL 9821510, at *1 (D. Alaska Nov. 29, 2007); *United States v. Powell*, No. CR15-244RAJ, 2016 WL 524251, at *4 (W.D. Wash. Feb. 10, 2016), *adhered to on reconsideration,* 2016 WL 3144382 (W.D. Wash. June 6, 2016), *aff'd,* 727 F. App'x 311 (9th Cir. 2018).

[39] 356 F.3d 1313, 1321–22 (10th Cir. 2004).

[40] *Id.* at 1317.

was the Major Fraud Act, which prescribed fines and imprisonment for "execution" or "attempted execution" "of a scheme or artifice to defraud," with intent to either defraud the United States or "obtain money or property by means of false or fraudulent pretenses, representations, or promises."[41]  The court considered the meaning of "execution" or "attempted execution" of a fraudulent scheme, and relied on cases concluding that whether certain conduct comprises "execution" of the scheme versus a part of the scheme itself is a fact-dependent inquiry.[42]

Under the facts of that case, the court determined that "execution" of a scheme to defraud under the Major Fraud Act was not a continuing offense.[43]  Like here, the text of the statute did not indicate that it is continuing, so the court looked to the nature of the violation.[44]  The court explained that in making this inquiry, "it is helpful to consider whether the offense is discrete in nature.  If a crime is discrete, it is less likely Congress 'assuredly intended' the crime to be a 'continuing offense.'"[45]  But "if the crime involves 'a prolonged course of conduct,' it is more likely to be a 'continuing offense.'"[46]

Under this standard, the court found that the Major Fraud Act punishes each "execution" or "attempted execution" of a scheme, rather than the scheme itself, or each act in furtherance of

---

[41] *Id.* (quoting 18 U.S.C. § 1031(a)).

[42] *Id.* at 1318.

[43] *Id.* at 1322.

[44] *Id.*

[45] *Id.* (quoting *Toussie v. United States*, 397 U.S. 112, 122–23 (1970)).

[46] *United States v. Wellington*, – F. Supp. 3d –, 2022 WL 17957451, at *3 (D.N.M. Dec. 27, 2022) (quoting *Toussie*, 397 U.S. at 120).

that scheme.[47]  Once the defendants in that case filed their false claim, "they did not need to engage in any additional conduct to realize the ultimate goal of the scheme."[48]

Here, the forced labor offense punishes one who

> knowingly provides or obtains the labor or services of a person—
>
> (1) by threats of serious harm to, or physical restraint against, that person or another person;
>
> (2) by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint; or
>
> (3) by means of the abuse or threatened abuse of law or the legal process. . . .[49]

Therefore, the statute criminalizes each instance of obtaining the labor or services of "a person" by one of three means.

Unlike the statute at issue in *Reitmeyer*, the nature of the forced labor offense suggests Congress intended to criminalize a continuing offense—it is not a "discrete" offense that focuses on individual executions of a scheme, like the Major Fraud Act.[50]  The focus of the offense is on obtaining the labor of services of the victim, through means that are not discrete in nature.  As alleged in the Indictment, even if certain acts by individual defendants were discrete, the criminal conduct continued because these were acts in a series or scheme that allowed them to obtain the labor and services of each victim over a lengthy period of time, either directly or under an

---

[47] *Reitmeyer*, 356 F.3d at 1322.

[48] *Id.* at 1318.

[49] 18 U.S.C. § 1589 (2000).  The Government represented at the motions hearing that it relies on the 2000 version of the statute since Defendants' alleged conduct began before the statute was amended in 2008.

[50] *United States v. Williams*, 356 F. App'x 167, 170–71 (10th Cir. 2009) (distinguishing language focusing on individual execution of a scheme to defraud under the Major Fraud Act from language in the wire fraud statute focusing on the scheme itself).

aiding-and-abetting theory.[51]  As alleged in the Indictment, this scheme relied on a culture of fear created over time by Defendants, and on a national and local structure that coordinated policy and disciplinary decisions.  Therefore, the Court finds that Congress intended § 1589 to be a continuing offense, and that the statute of limitations began to run on Counts 2 through 8 when the conduct ran its course.  Because the Indictment alleges that each offense took place during a period that extended beyond October 21, 2011, the charges are timely under the ten-year statute of limitations.

Although the Government urges that an extended statute of limitations applies under § 3283 to all counts except Count 5, it also urges that it need not rely on that limitations period at this stage in order for the Court to deny the motion to dismiss.  The Court agrees.  As stated above, when considering only the four corners of the Indictment, there are sufficient allegations demonstrating that Defendants' offense conduct took place within the ten-year statute of limitations, and Defendants' arguments to the contrary would require this Court to disregard the Indictment's allegations and rely on evidence outside of the Indictment.  Therefore, the Court need not at this time determine whether the extended statute of limitations in § 3283 applies to the offenses alleged in the Indictment.[52]  Defendants' motions to dismiss the Indictment as time-barred are denied.

## C.      Duplicity

Related to Defendants' motions to dismiss based on the statute of limitations defense is Staton's motion to dismiss based on duplicity under Fed. R. Crim. P. 12(b)(3)(B)(i), which was joined by several other Defendants.  An indictment is duplicitous if it charges two or more

---

[51] Doc. 1 ¶ 64.

[52] Relatedly, the Court need not resolve at this time Aubrey Jenkins' argument that applying § 3283 constitutes an ex post facto violation.

separate offenses in the same count.[53]  When this happens, there is "a danger that the jury may convict a defendant although not reaching a unanimous agreement on precisely which charge is the basis for the conviction."[54]  Moreover, "'[a] defendant may be prejudiced in a subsequent double jeopardy defense,' and . . . '[a] court may have difficulty determining the admissibility of evidence,'" if there is a duplicitous indictment.[55]  The Court typically can cure a duplicity problem by giving "an augmented instruction requiring unanimity on one or the other of the acts charged within a count that otherwise appear to constitute separate offenses."[56]

Here, Defendants argue that Counts 2 through 8 of the Indictment are duplicitous for two overarching reasons.  First, they argue that these counts charge multiple offenses because the Indictment uses language from both the 2000 and 2008 versions of the forced labor statute, and lists all of the alternative ways of violating the statute.  Second, they argue that each count alleges multiple acts by different Defendants over a lengthy period of time and in different locations that are not necessarily ongoing, rendering it impossible to tell what theory of liability the Government will attempt to prove at trial for each Defendant.  Defendants claim that these issues risk convictions lacking jury unanimity on the specific grounds for conviction, and create prejudice in a later double jeopardy defense.

### 1. 18 U.S.C. § 1589

Defendants' first argument proceeds in two steps.  First, Defendants insist that the forced labor charges in the Indictment "straddle" two versions of § 1589.  As quoted above, the 2000

---

[53] *United States v. Trammell*, 133 F.3d 1343, 1354 (10th Cir. 1998) (citing *United States v. Haddock*, 956 F.2d 1534, 1546 (10th Cir. 1992)).

[54] *United States v. Washington*, 653 F.3d 1251, 1262 (10th Cir. 2011) (quoting *Trammell*, 133 F.3d at 1354).

[55] *Id.* (alterations in original) (quoting *Trammell*, 133 F.3d at 1354).

[56] *Trammell*, 133 F.3d at 1354–55 (quoting *United States v. Duncan*, 850 F.2d 1104, 1112 n.8 (6th Cir. 1988)).

version of the statute provides three ways that the statute can be violated in the disjunctive.  The first subsection is: "by threats of serious harm to, or physical restraint against, that person or another person."[57]  The other two subsections are "by means of": "any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint," or "the abuse or threatened abuse of law or the legal process."[58]

The 2008 amendment added that knowingly providing or obtaining the labor or services of a person can be "by any one of, or by any combination of, the following means."[59]  The amended version then lists four different means by which a person can violate the statute in the disjunctive in subsections (a)(1) through (4).[60]  Each subsection is introduced with the language "by means of."[61]  It also added definitions of the terms "abuse or threatened abuse of law or legal process," and "serious harm."[62]

The language in paragraph 64 of the Indictment tracks the 2000 version of the statute, not the 2008 version, and is followed by a table listing each count, the victim associated with it, the Defendants charged, and the date ranges that apply.  The Court is satisfied that the Government relies on the 2000 version of the statute and does not attempt to allege these offenses under a hybrid version of the statute, as Defendants claim.  Indeed, paragraph 64 tracks the language of that version almost verbatim, although stating the alternatives in the conjunctive.[63]

---

[57] 18 U.S.C. § 1589(1) (2000).

[58] *Id.* § 1589(2)–(3).

[59] 18 U.S.C. § 1589(a) (2008).

[60] *Id.*

[61] *Id.*

[62] *Id.* § 1589(c).

[63] "[A] crime denounced in the statute disjunctively may be alleged in an indictment in the conjunctive, and thereafter proven in the disjunctive."  *United States v. Powell*, 226 F.3d 1181, 1192 n.4 (10th Cir. 2000).

16

The second part of Defendants' duplicity argument is that because the Indictment charges all of the coercion alternatives provided by the statute in the conjunctive, it charges more than one offense. "The law of the Tenth Circuit is clear: where two or more acts could be charged as separate counts but are part of the same scheme or course of conduct, they are not necessarily duplicitous and may be charged in one count."[64]  The question turns on whether the charged conduct constitutes separate offenses or instead are "merely different means of committing a single offense."[65]  Elements of an offense must be found unanimously by a jury, but "the jury need not agree unanimously on the means by which an element is proven."[66]  Indeed, under Fed. R. Crim. P. 7(c)(1), an indictment may allege a defendant committed an offense "by one or more specified means."  There is "no rule that renders an indictment duplicitous because it charges as one joint offense a single completed transaction instead of charging in separate counts as many offenses as the evidence at trial might conceivably sustain."[67]

The elements of forced labor under the 2000 version of the statute are:

> (1) the defendant obtained the labor or services of another person;
> (2) the defendant did so through one of the following prohibited means (a) through threats of serious harm to, or physical restraint against that person or any other person; or (b) through a scheme, plan or pattern intended to cause the person to believe that non-performance would result in serious harm to, or physical restraint against, that person or any other person; or (c) through the abuse or

---

[64] *United States v. Gann*, 159 F. App'x 57, 59 (10th Cir. 2006) (first citing *United States v. Jaynes*, 75 F.3d 1493, 1502–03 (10th Cir.1996); and then citing *United States v. Browning, Inc.*, 572 F.2d 720, 725–26 (10th Cir.1978)).

[65] *Id.* (first citing *Richardson v. United States*, 526 U.S. 813, 816 (1999); and then citing *United States v. Weller*, 238 F.3d 1215, 1219–20 (10th Cir. 2001)).

[66] *United States v. Powell*, 226 F.3d 1181, 1196 (10th Cir. 2000) (quoting *Richardson*, 526 U.S. at 817); *see also Sullivan v. Bruce*, 44 F. App'x 913, 915 (10th Cir. 2002) .

[67] *United States v. McKneely*, 69 F.3d 1067, 1072 (10th Cir. 1995) (quoting *Korholz v. United States*, 269 F.2d 897, 901 (10th Cir. 1959)).

threatened abuse of the law or the legal process; and (3) that the defendant acted knowingly.[68]

Therefore, to resolve the duplicity motion, this Court must determine whether the list of alternative ways to violate the 2000 version of the statute are elements of the offense or means by which an element is proven.

The Ninth Circuit is the only circuit court to squarely address this issue in the context of the forced labor statute, holding that the four listed alternatives in the 2008 version of the statute are means, and not elements, of the offense.[69]  First, the court pointed to the statute's ordinary meaning; specifically, its repeated use of the word "means" to describe the alternatives by which a defendant might commit forced labor, and the language in the statute that it is violated when a person commits "any one of, or by any combination of" those means.[70]  Second, the court found that the structure of the statute supported its interpretation, because "[i]f statutory alternatives carry different punishments or if the statute identifies which alternatives must be charged, then the alternatives must be elements."[71]  The statute does not carry different punishments for each alterative as an element of the offense.[72]  Third, the court considered its own precedent finding that the substantially-similar sex trafficking statute, which was added to Title 18 at the same time as the forced labor statute for a similar purpose, listed alternative means, rather than elements.[73] And finally, the court found that construing the listed alternatives in § 1589 as means did not

---

[68] *United States v. Sabhnani*, 539 F. Supp. 2d 617, 629 (E.D.N.Y. 2008), *aff'd,* 599 F.3d 215 (2d Cir. 2010); *see also United States v. Bello*, 503 F. App'x 910, 915 (11th Cir. 2013).

[69] *United States v. Barai*, 55 F.4th 1245, 1250–52 (9th Cir. 2022).

[70] *Id.* at 1250.

[71] *Id.* (citing *Mathis v. United States*, 579 U.S. 500, 518 (2016)).

[72] *Id.* at 1251.

[73] *Id.* (citing *United States v. Mickey*, 897 F.3d 1173, 1181–82 (9th Cir. 2018)).  The court made the additional point that "[w]hen statutes 'were enacted at the same time and form part of the same Act, the duty to harmonize them is particularly acute.'" *Id.* (quoting *United States v. Gallenardo*, 579 F.3d 1076, 1083 (9th Cir. 2009)).

"aggravate[] the dangers of unfairness," because the statute's list of alternatives is relatively narrow, and lacks the sort of "breadth or divergence . . . of alternatives" that would potentially create unfairness.[74]  The court explained that "[e]ach of the paragraphs describes a type of coercion, and each alternative is used to effectuate the same purpose: the acquisition of forced labor."[75]

The Government urges the Court to follow *Barai* in determining that the alternatives listed in § 1589 are means and not elements.  Defendants argue that this case is nonbinding and that it only applies to the 2008 version of the statute, not the 2000 version of the statute that the Government relies on in this case.

This Court is persuaded by the Ninth Circuit's reasoning in *Barai* and finds it equally applicable to the 2000 version of the statute.  Like the *Barai* court, this Court first should consider the statute's text, "in an effort to discern and apply the ordinary meaning of its terms at the time of their adoption."[76]  The Ninth Circuit found dispositive the statute's repeated use of the words "by means of" to introduce each alternative in the 2008 statute.  The 2000 version lists only three alternatives, two of which begin with the "by means of" language.  The third alternative is "by threats of serious harm to, or physical restraint against, that person or another person."[77]  The prefatory language in the 2000 version does not include the "any one of, or by any combination of" language that was added in 2008.

Despite these distinctions, this Court finds that the ordinary meaning of the 2000 statute supports the conclusion that it lists means, rather than elements, of the offense.  Two of the three

---

[74] *Id.* at 1252 (citing *Richardson v. United States*, 526 U.S. 813, 819 (1999)).

[75] *Id.*

[76] *BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1537 (2021).

[77] 18 U.S.C. § 1589 (2000).

alternatives explicitly state that they are means, and are listed with the third alternative in the disjunctive, just like in the 2008 version.[78]  And while the prefatory language changed in 2008, the prior version of the statute stating that the defendant "knowingly provides or obtains the labor or services of a person" contains the other two elements of the offense, and makes clear that the three subsections that follow are alternative means of committing the offense.  As with the 2008 version of the statute, the alternatives listed in the 2000 version do not carry different punishments, an important consideration in resolving the means-elements question.[79]  Moreover, the Ninth Circuit's fairness discussion is equally if not more applicable to the 2000 version of the statute.  The 2000 version lists three, instead of four, alternative means that are similar to the 2008 version.  As with the 2008 version, each one "describes a type of coercion, and each alternative is used to effectuate the same purpose" of obtaining forced labor.[80]  Thus, like the 2008 version of § 1589, the alternatives in the 2000 version do not contain the sort of breadth and divergence cited by the Supreme Court as implicating fairness concerns.

In sum, the Court rejects Defendants' argument that the forced labor counts in the Indictment involve charges under a "hybrid" version of the 2000 and 2008 statutes.  And the Court likewise finds no basis for dismissal on the basis that the alternatives listed in the 2000 version of the statute are elements that would require separate charges when stated in the conjunctive.

---

[78] The Court notes that the use of the conjunction "and" in the Indictment's recitation of the forced labor alternatives does not mean Counts 2 through 8 are duplicitous.  The law is clear that there is no duplicity issue with conjunctive allegations based on a statute written in the disjunctive.  *McDonough v. United States*, 227 F.2d 402, 404 (10th Cir. 1955).

[79] *See Mathis v. United States*, 579 U.S. 500, 517–18 (2016); *Barai*, 55 F.4th at 1250–51.

[80] *See Barai*, 55 F.4th at 1252.

> **2.     Multiple Defendants, Offense Conduct, Jurisdictions, and Date Ranges in Each Count**

Next, Defendants argue more generally that the breadth of conduct alleged in the forced labor counts constitute separate offenses that should have been charged in separate counts. Relying on discovery information from the FBI case agent, Defendants argue that each count involves different conduct by each Defendant, in different locations, on different dates.  For example, Staton's motion includes charts for each count that purportedly summarize Special Agent Ramana's testimony before the grand jury, setting forth for each Defendant the conduct alleged, the location, and the date(s).  Defendants argue that the conduct, location, and time periods for each Defendant is too unrelated to be considered part of the same offense.

The Court agrees with the Government that the offenses alleged in Counts 2 through 8 need not be dismissed as duplicitous for several reasons.  Most importantly, the Court may not consider the evidence upon which Defendants rely in deciding a motion to dismiss.  The Court must consider only the four corners of the Indictment, yet Defendants' arguments rely entirely on evidence obtained during discovery.  Additionally, the Court has already concluded that forced labor is a continuing offense for purposes of the statute of limitations.  The forced labor offense is not discrete; the Government alleges that Defendants acted together as part of a single scheme to obtain forced labor from different victims across the country.  The Indictment alleges a national and local structure within UNOI, and that Royall Jenkins appointed those in leadership positions both nationally and locally.  He appointed all Defendants to national leadership positions, and they all assisted him in managing the organization.  The local managers of UNOI business reported to local officials, and sometimes to national officials.  Together, Defendants helped enforce UNOI's strict rules and instilled in the victims a culture of fear that allowed

Defendants to obtain forced labor from them over a lengthy period of time and in multiple locations throughout the United States.

Moreover, the Government alleges in Counts 2 through 8 that Defendants aided and abetted one another.  "The federal aiding and abetting statute does not create an independent crime; instead, it simply abolishes the common law distinction between principals and accessories."[81]  Therefore, the fact that the Government charges both direct and aiding and abetting liability in the same counts does not render the charges duplicitous.

In sum, Defendants' motions to dismiss based on duplicity are denied.  Although the Indictment alleges conduct that takes place over a lengthy period of time against multiple Defendants, the Indictment permissibly charges a single, continuing offense that involves several alternative means of committing the offense, under both direct and aiding and abetting theories. Because the Indictment permissibly charges two or more acts as part of the same scheme or course of conduct in each of the forced labor counts, they are not duplicitous and may be charged in one count.

## II.    Motions for Bill of Particulars

Several Defendants alternatively seek a bill of particulars if the Court denies the motions to dismiss.  The Tenth Circuit has set forth the following standards for granting a bill of particulars:

> "The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense." "A bill of particulars is not necessary if the indictment sets forth the elements of the offense charged and sufficiently apprised the defendant of the charges to enable him to prepare for trial."  "[T]he defendant is not entitled to notice of all of the evidence the government intends to produce, but only the theory of the government's case."  We review the denial of a

---

[81] *United States v. Bowen*, 527 F.3d 1065, 1078 (10th Cir. 2008).

> motion for a bill of particulars for an abuse of discretion, and we will not reverse "unless defendant shows that he was actually surprised at trial and thereby incurred prejudice to his substantial rights."[82]

At the motions hearing, the Court asked each Defendant to specify the information sought in a bill of particulars. All Defendants argued that a bill of particulars should identify the specific conduct in Counts 2 through 8 that the Government attributes to each Defendant. Additionally, Defendants request that the Government provide factual information that would support the extended statute of limitations in 18 U.S.C. § 3283: the victims' dates of birth, facts that support the Government's physical abuse allegations, and facts supporting a nexus between abuse or kidnapping and forced labor.

The Court denies Defendants' motions for bill of particulars to the extent they seek detailed factual information about the conduct upon which each Defendant is alleged to have engaged with respect to each victim. In general, the Court finds that such a bill of particulars is not necessary in this case because the Indictment—a lengthy speaking Indictment—sets forth the elements of the offenses and sufficiently informs Defendants of the charges. Most of Defendants' requests seek to obtain evidence that the Government intends to produce, rather than understand its theory of the case. Given the detailed Indictment and lengthy proffer offered by the Government in response to the motion for bill of particulars, the Court finds that Defendants have been sufficiently apprised of the charges and theory of the Government's case.[83]

---

[82] *United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996) (quoting *United States v. Levine*, 983 F.2d 165, 166–67 (10th Cir.1992)) (citing *United States v. Kunzman*, 54 F.3d 1522, 1526 (10th Cir.1995)).

[83] *See, e.g.*, *United States v. Rogers*, No. 18-10018-01-EFM, 2019 WL 2435758, at *3 (D. Kan. June 11, 2019) (declining to grant a bill of particulars where the indictment tracked the statutory language and the Government provided defendants with sufficient discovery).

Defendants also seek information that supports the Government's alternative statute-of-limitations theory that § 3283 applies to most of the charges alleged in the Indictment. Under § 3283, the statute of limitations is extended if the offense "involves" sexual abuse, physical abuse, or kidnapping of minor victims. The Indictment alleges that most of the victims were minors, but does not specifically identify which ones. It alleges that Defendants regularly punished the victims, including through physical abuse.[84]

The Court has determined that the Indictment sufficiently alleges timely offenses under a ten-year statute of limitations. However, the Government contends that the extended statute of limitations under § 3283 also applies, and submits that it will offer evidence at trial to support this theory: evidence that the offenses "involved" sexual abuse, physical abuse, or kidnapping of minor victims. Given the Government's position, and the likelihood that the Government will submit evidence to support this theory at trial, the Court agrees that Defendants should be provided with notice of the threshold facts required to understand the Government's theory that the extended statute of limitations applies so that they can prepare a defense. Specifically, the Government is ordered to file a bill of particulars specifying the dates of birth for each victim identified in these counts. This information is particularly important here given the lengthy period of conduct alleged in the Indictment. Dates of birth for the victims is necessary for each Defendant to defend against the extended statute of limitations at trial.

However, the Court finds that Defendants' requests for facts that support the Government's physical abuse allegations, and facts supporting a nexus between abuse or kidnapping and forced labor, must be denied. The Government has provided sufficient allegations in the Indictment of physical abuse to put Defendants on notice of the conduct it will

---

[84] Doc. 1 ¶ 33.

rely on at trial to support these allegations.  And the Government provided a detailed summary of evidence in its response to the motions for bill of particulars that puts Defendants on further notice of the facts and evidence it will rely on as to each Defendant.

Additionally, Defendants' request for "nexus evidence" is not warranted.  Courts have rejected a categorial approach to determining whether § 3283 applies.[85]  "The appropriate inquiry is whether the charged offenses involved the abuse of a minor on the facts alleged in this case."[86] This "means that courts should look to the circumstances of an offense as committed in each case" rather than "the bare legal charges in deciding whether § 3283 applie[s]."[87]  Therefore, to the extent Defendants demand further information about how the abuse or kidnapping is tied to the forced labor itself, such information is not required under § 3283.

Defendants are free to defend themselves at trial by arguing that their conduct in this case did not involve physical abuse, sexual abuse, or kidnapping.  But the Court rejects their attempt to impose a categorial approach to § 3283 that would require the Government to show that the alleged abuse or kidnapping the Government relies on for purposes of § 3283 was "related" to the forced labor.  Such a standard has no basis in the statutory language, and the case law makes clear that a categorial approach does not apply for determining whether an offense "involves" abuse or kidnapping.

In sum, Defendants' motion for a bill of particulars is denied except to the extent they seek the dates of birth for the victims identified in the forced labor counts.

---

[85] *United States v. Maxwell*, 534 F. Supp. 3d 299, 313 (S.D.N.Y. 2021) (citing *Weingarten v. United States*, 865 F.3d 48, 58–60 (2d Cir. 2017)) (rejecting categorial approach to § 3283 in favor of a case-specific approach); *United States v. Kepler*, No. 20-CR-276, 2021 WL 4027203, at *4 (N.D. Okla. Sept. 3, 2021) (citations omitted) (relying on Second and Third Circuit authority that declines to limit the analysis to the elements of the charged offense and considers the underlying facts of the case).

[86] *Maxwell*, 534 F. Supp. 3d at 314.

[87] *Id.* (quoting *Weingarten*, 865 F.3d at 59–60).

### III.   Motion to Sever

Majeed, Hadley, and Staton ask to be severed from the other Defendants for trial on the basis that they have antagonistic defenses that would create prejudice if they were tried together. They argue that Royall Jenkins and other Defendants are more culpable, that they were not a part of the conspiracy, or that they withdrew before the other Defendants. These Defendants claim there will be a spillover effect due to the more overwhelming evidence against their co-defendants. The Government responds that a bare assertion of spillover effect is not sufficient to demonstrate prejudice, that their defenses are not antagonistic, that multiple trials would lead to inefficiency, inequity, and potential trauma to witnesses, and that limiting instructions will cure any potential prejudice.

Fed. R. Crim. P. 8(b) permits an indictment to charge two or more defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." This rule expresses "a preference in the federal system for joint trials of defendants who are indicted together."[88] Joint trials are preferred because "[t]hey promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts."[89]

Pursuant to Fed. R. Crim. P. 14(a), however, a court "may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires" if joinder "appears to prejudice a defendant or the government." Severance is discretionary and should be granted only when "there is a serious risk that a joint trial would compromise a specific trial right of one of

---

[88] *Zafiro v. United States*, 506 U.S. 534, 537 (1993).

[89] *United States v. Hall*, 473 F.3d 1295, 1301 (10th Cir. 2007) (alteration in original) (quoting *Zafiro*, 506 U.S. at 537).

the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."[90] The Tenth Circuit "indulge[s] a presumption that co-conspirators in a conspiracy trial should be tried together."[91]

A risk of prejudice "might occur" when prejudicial evidence that would be inadmissible against a defendant, if tried alone, is admitted against a co-defendant in a joint trial, but "the nearly insuperable rule in [the Tenth Circuit] is that 'a defendant cannot obtain severance simply by showing that the evidence against a co-defendant is more damaging than the evidence against herself.'"[92] Neither "'a mere allegation that defendant would have a better chance of acquittal in a separate trial' nor an argument that evidence against one defendant would have a 'spillover effect' on another defendant demonstrates prejudice."[93]

The Court finds no basis for severance here. Defendants have not demonstrated a serious risk that a joint trial would jeopardize a specific trial right, or that it would cause a prejudicial spillover. They have not presented any considerations that outweigh the presumption in favor of trying them together as co-conspirators. The fact that several Defendants plan to claim withdrawal earlier than others is not a basis for severance. Moreover, Defendants' generic claims of spillover prejudice do not suffice. They amount to nothing more than a bare assertion that they would have a better chance at acquittal if they were tried alone. Such a reason for severance has been soundly rejected in this Circuit. Finally, the Court is persuaded by the Government's argument that multiple trials would lead to inefficiency, inequity, and potential

---

[90] *Id.* (quoting *Zafiro*, 506 U.S. at 539).

[91] *United States v. Clark*, 717 F.3d 790 (10th Cir. 2013).

[92] *United States v. Wardell*, 591 F.3d 1279 (10th Cir. 2009) (quoting *United States v. Dazey*, 403 F.3d 1147, 1165 (10th Cir. 2005)).

[93] *Id.* (quoting *United States v. Jones*, 530 F.3d 1292, 1303 (10th Cir. 2008)).

trauma to witnesses, and that limiting instructions will cure any potential prejudice. Accordingly, Defendants' motions for severance are denied.

## IV.     Conclusion

The Court denies Defendants' motions to dismiss raising statute-of-limitations and duplicity defenses.  Confining its review to the allegations in the Indictment, the Court finds that the charges are timely under a ten-year statute of limitations, and that the forced labor counts permissibly allege multiple theories or means of violating the forced labor statute without implicating duplicity concerns.  Although a ruling on whether § 3283 applies to the facts of this case is premature, the Government indicates that it will offer evidence at trial to support this extended statute of limitations based on physical abuse, sexual abuse, or kidnapping of a minor. The Court therefore grants Defendants' motions for a bill of particulars to the extent they seek dates of birth for each victim identified in the forced labor counts; the motions for bill of particulars are otherwise denied.  Likewise, the Court denies Defendants' motions to sever.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Majeed's Motion to Dismiss Complaint/Case or in the Alternative for a Bill of Particulars (Doc. 122), Defendant Rassoul's Motion to Dismiss Indictment for Failure to Prosecute Within the Statute of Limitations (Doc. 157), Defendant Staton's Motion to Dismiss Indictment as Time-Barred, or in the Alternative, for a Bill of Particulars (Doc. 163), Defendant Hadley's Motion to Dismiss Indictment as Time-Barred (Doc. 153), Defendant Jenkins' Motion to Dismiss Indictment for Impermissible Federalization of a State Crime, for violation of Statue of Limitations, and Motion for Bill of Particulars (Doc. 161), and Defendant Peach's Motion to Dismiss Indictment and for Bill of Particulars (Doc. 167), are **granted in part and denied in part**.  These motions are

**granted** to the limited extent they seek a bill of particulars that includes dates of birth for the victims identified in Counts 2 through 8.  The motions are otherwise **denied**.

**IT IS FURTHER ORDERED BY THE COURT** that Defendant Staton's Motion to Dismiss as Duplicitous (Doc. 160) is **denied**.

**IT IS FURTHER ORDERED BY THE COURT** that Defendant Majeed's Motion to Sever (Doc. 121) is **denied**.

**IT IS SO ORDERED.**

Dated: July 27, 2023

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE