## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>KAABA MAJEED,<br>YUNUS RASSOUL, a.k.a. Yunus Rassoull,<br>JAMES STATON, a.k.a. ADAM WINTHROP,<br>RANDOLPH RODNEY HADLEY,<br>DANIEL AUBREY JENKINS,<br>DANA PEACH,<br>ETENIA KINARD, a.k.a. Etenia Kinnard, and<br>JACELYN GREENWELL,<br><br>      Defendants. | Case No. 21-20060-JAR |

## MEMORANDUM AND ORDER

The government filed an eight-count Indictment on October 20, 2021, against eight Defendants belonging to the United Nation of Islam ("UNOI") organization, alleging a claim against all Defendants for conspiracy to commit forced labor in violation of 18 U.S.C. §§ 371 and 1589, and alleging six counts of substantive forced labor violations under 18 U.S.C. §§ 1589, 1594(a), and 2. Each substantive forced labor count is tied to a different victim, and is alleged against different subgroups of Defendants. Defendants Etenia Kinard and Jacelyn Greenwell pled guilty; the remaining Defendants are set for trial on August 1, 2024.

Before the Court are the following motions in limine to admit or exclude certain evidence at trial: the Government's Motion to Disclose Expert Out of Time (Doc. 262); the Government's Sealed Motion in Limine to Exclude Evidence and Testimony (Doc. 260); the Government's Motion in Limine to Admit Evidence as Direct and Intrinsic Evidence, or Alternatively Under Rule 404(b) (Doc. 233); Defendant Kaaba Majeed's Motion in Limine (Doc. 247); Defendant

James Staton's Motion in Limine (Doc. 238); Defendant Randolph Rodney Hadley's Motion in Limine (Doc. 250); Defendant Daniel Aubrey Jenkins' Motion in Limine (Doc. 251); and Defendant Dana Peach's Motion in Limine (Doc. 252).  All Defendants set for trial in this matter join in all other Defendants' motions in limine.  The Court held a hearing on these motions on February 2, 2024, during which it heard oral argument.

The Court orally ruled on several motions at the hearing: Government's Motion to Disclose Expert Out of Time, the Government's Sealed Motion in Limine to Exclude Evidence and Testimony, and certain motions within Staton's, Jenkins', and Peach's omnibus motions in limine.  The Court memorializes its rulings on these motions below.

On the remaining motions, the Court indicated that it would issue a written option.  The Court has reviewed the parties' submissions and the arguments at the hearing, and it is now prepared to rule on those motions it took under advisement.  As explained more fully below, the government's Motion in Limine to Admit Evidence as Direct and Intrinsic Evidence, or Alternatively Under Rule 404(b) is granted; Defendant Kaaba Majeed's Motion in Limine is denied; Defendant James Staton's Motion in Limine is granted in part and denied in part; Defendant Randolph Rodney Hadley's Motion in Limine is denied; Defendant Daniel Aubrey Jenkins' Motion in Limine is granted in part and denied in part, and Defendant Dana Peach's Motion in Limine is granted in part and denied in part.

## I.        Motions Ruled on Orally at the February 2, 2024 Hearing

As explained fully on the record at the hearing, the Court ruled as follows:

### A.        Government Motions

The government's motion to disclose expert Amy Corrigan out of time is granted.  The Court will set new trial deadlines in light of the trial continuance, including a new deadline for Defendants to identify any rebuttal expert they may need to disclose.

The government's sealed motion in limine to exclude evidence and testimony impeaching government witnesses through evidence of, or inquiry into, certain prior arrests and convictions is granted.  The Court excludes any evidence or testimony about these individuals' prior arrests. The Court excludes prior convictions that do not involve dishonesty.

### B.        Defendants' Omnibus Motions

The Court granted in part and denied in part Staton's and Peach's omnibus motions in limine as follows:

- The motion to exclude untimely discovery is denied.  Productions 9 and 10 were not untimely under the Scheduling Order, especially in light of the trial continuance.

- The motion for early access to the jury pool is granted in part and denied in part. Producing the list of potential jurors is not feasible 30 days before trial as requested by Defendants.  The Court will send the list to the parties as soon as it is available, which should be approximately one week before trial.

- The motion for additional peremptory challenges is granted.  The government shall have ten (10) and Defendants shall have a total of eighteen (18) peremptory strikes.  The Court will seat twelve (12) jurors and three (3) alternates.

- The motion to provide notice of the next day's witnesses is granted. The parties shall follow the Court's guidelines on this issue.

- The motion to sequester witnesses under Fed. R. Evid. 615(b) is granted, and the Court considers the rule invoked. The parties shall follow the Court's guidelines on this issue.

- The motion to exclude any references by counsel or witnesses to UNOI as a "cult" under Fed. R. Evid. 403 is granted. The government will instruct the witnesses not to refer to UNOI as a cult. If an unexpected or unintentional reference occurs, the parties may object contemporaneously.

The Court granted Defendant Daniel Aubrey Jenkins' omnibus motion in limine to the extent that it asks that the parties refer to him by his full name, rather than "Jenkins" or "Mr. Jenkins," and instruct the witnesses to do the same. Defendant can clarify if there is any confusion. The Court also granted Jenkins' motion to exclude evidence about drug dealing and drug use in the government's case-in-chief. The Court took the remainder of Jenkins' motion under advisement.

## II. Motions Taken Under Advisement at the February 2, 2024 Hearing

### A. Government's Motion in Limine to Admit Evidence as Direct and Intrinsic Evidence, or Alternatively Under Rule 404(b) (Doc. 233)

In this motion, the government asks the Court to admit the following evidence as intrinsic to the charges in this case, or, alternatively, under Fed. R. Evid. 404(b): (1) physical violence; (2) sexual abuse, including forced marriage; (3) threats of serious harm; (4) emotional abuse; (5) isolation and kidnapping; (6) unauthorized use of credit cards and possession of identification documents; and (7) certain other conduct. Specifically, the government contends that this evidence supports the "prohibited means" element of the forced labor offense. Defendants

respond that this evidence is not intrinsic to the offenses charged—they are not part of the elements of the offense—and any relevance as other acts is substantially outweighed by the prejudicial effect. They argue further that the government reads the prohibited means provisions in the forced labor statute too broadly and that, under a proper reading of the prohibited means element of the 2000 version of the statute, this evidence is not intrinsic. They argue that the evidence is also inadmissible under Rules 404(b) and 403 because the prejudicial effect of such evidence substantially outweighs its limited probative value.

### 1.    Fed. R. Evid. 404(b)

Fed. R. Evid 404(b) states in part:

> (1)    Evidence of any other crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> (2)    [It] may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.[1]

The Court must consider four factors in weighing the admissibility of evidence under Rule 404(b): "(1) whether the evidence is offered for a proper purpose, (2) its relevancy, (3) that the probative value of the evidence is not substantially outweighed by its prejudicial effect, and (4) a limiting instruction is given if the defendant so requests."[2]

However, Rule 404(b) only applies to evidence of acts extrinsic to the crime charged.[3] "Evidence is extrinsic 'when it is extraneous and is not intimately connected or blended with the

---

[1] Fed. R. Evid. 404(b)(1)–(2).

[2] *United States v. Mares*, 441 F.3d 1152, 1156 (10th Cir. 2010) (first citing *Huddleston v. United States*, 485 U.S. 681, 691 (1988); and then citing *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000)).

[3] *United States v. Oles*, 994 F.2d 1519, 1522 (10th Cir. 1993) (quoting *United States v. Sasser*, 971 F.2d 470, 479 (10th Cir. 1992)).

factual circumstances of the charged offense.'"[4]  Rule 404(b) does not apply to evidence that is considered intrinsic to the crime charged.[5]  Evidence is intrinsic when it is "directly connected to the factual circumstances of the crime and provides contextual or background information to the jury."[6]  The Tenth Circuit counsels that evidence is intrinsic when it:

> • [is] 'inextricably intertwined' with the charged conduct,
>
> • occurred within the same time frame as the activity in the conspiracy being charged,
>
> • [is] a necessary preliminary to the charged conspiracy,
>
> • provide[s] direct proof of the defendant's involvement with the charged crimes,
>
> • [is] "entirely germane background information, . . . 'directly connected to the factual circumstances of the crime,'" or
>
> • [is] necessary to provide the jury with background and context of the nature of the defendant's relationship to his accomplice.[7]

### 2.        Whether the Evidence is Intrinsic and Probative

In order to determine whether the evidence at issue is intrinsic to the forced labor offenses charged in the Indictment, the Court first considers the elements of the offense. The government states that the 2000 version of the forced labor statute applies here since the conspiracy began prior to the 2008 amendments.  That version of the statute provides:

> Whoever knowingly provides or obtains the labor or services of a person--
>
> (1)  by threats of serious harm to, or physical restraint against, that person or another person;

---

[4] *United States v. Cushing*, 10 F.4th 1055, 1075 (10th Cir. 2021) (quoting *United States v. Kupfer*, 797 F.3d 1233, 1238 (10th Cir. 2015)).

[5] *Kupfer*, 797 F.3d at 1238 (citing *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011)).

[6] *Cushing*, 10 F.4th at 1075–76 (quoting *Kupfer*, 797 F.3d at 1238).

[7] *Kupfer*, 797 F.3d at 1238 (footnotes omitted) (first quoting *United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir. 1993); and then quoting *Irving*, 665 F.3d at 1212–13).

> (2)  by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint; or
>
> (3)  by means of the abuse or threatened abuse of law or the legal process,
>
> shall be fined under this title or imprisoned not more than 20 years, or both.   If death results from the violation of this section, or if the violation includes kidnapping or an attempt to kidnap, aggravated sexual abuse or the attempt to commit aggravated sexual abuse, or an attempt to kill, the defendant shall be fined under this title or imprisoned for any term of years or life, or both.[8]

The elements are as follows:

> (1) the defendant obtained the labor or services of another person; (2) the defendant did so through one of the following prohibited means (a) through threats of serious harm to, or physical restraint against that person or any other person; or (b) through a scheme, plan or pattern intended to cause the person to believe that non-performance would result in serious harm to, or physical restraint against, that person or any other person; or (c) through the abuse or threatened abuse of the law or the legal process; and (3) that the defendant acted knowingly.[9]

The government maintains that the evidence it seeks to admit supports its burden of showing that Defendants obtained the victims' labor through one of the three prohibited means in the statute; specifically, through one of the first two listed means.  Therefore, the government argues that the evidence is intrinsic, and Rule 404(b) does not apply.  Defendants respond that the government reads the statute too broadly by utilizing language from the 2008 amendments to the statute.  They argue that the government's evidence of sexual, verbal, and physical abuse, threats, and isolation are not intrinsic to the prohibited means listed in the 2000 version.

---

[8] 18 U.S.C. § 1589.

[9] *United States v. Sabhnani*, 539 F. Supp. 2d 617, 629 (E.D.N.Y. 2008), *aff'd,* 599 F.3d 215 (2d Cir. 2010); *see also United States v. Bello*, 503 F. App'x 910, 915 (11th Cir. 2013).

Defendants further argue that there is no nexus between the evidence the government seeks to admit and obtaining forced labor.

The Court begins its analysis by recognizing that Congress passed the Victims of Trafficking and Violence Protection Act of 2000 ("TVPA") to correct what it "viewed as the Supreme Court's mistaken holding in *United States v. Kozminski*."[10]  In *Kozminski*, the Court held that "involuntary servitude" under 18 U.S.C. § 1584 and the Thirteenth Amendment is "limited to cases involving the compulsion of services by the use or threatened use of physical or legal coercion."[11]  The Court held that "[w]hether other conditions are so intolerable that they, too, should be deemed to be involuntary is a value judgment that we think is best left for Congress."[12]  "Congress heeded the Court's call in *Kozminski* for legislative action when it passed the TVPA, which defines forced labor broader than *Kozminski*'s definition of involuntary servitude as used in the Thirteenth Amendment . . . ."[13]  This is reflected in the codified list of purposes and findings in the statute,[14] as well as in the House Conference Report, which explains:

> Because provisions within section 1589 only require a showing of a threat of 'serious harm,' or of a scheme, plan, or pattern intended to cause a person to believe that such harm would occur, federal prosecutors will not have to demonstrate physical harm or threats of force against victims.  The term 'serious harm' as used in this Act refers to a broad array of harms, including both physical and nonphysical, and section 1589's terms and provisions are intended to be construed with respect to the individual circumstances of victims that are relevant in determining whether a particular type

---

[10] *United States v. Dann*, 652 F.3d 1160, 1169 (9th Cir. 2011) (citing *United States v. Kozminski*, 487 U.S. 931 (1988)).

[11] 487 U.S. at 948.

[12] *Id.* at 951.

[13] *Burrell v. Staff*, 60 F.4th 25, 36 (3d Cir.), *cert. denied sub nom. Lackawanna Recycling Ctr., Inc. v. Burrell*, 143 S. Ct. 2662 (2023).

[14] 22 U.S.C. § 7101.

> or certain degree of harm or coercion is sufficient to maintain or
> obtain a victim's labor or services, including the age and
> background of the victims.[15]

Under the statute, if the means falls under the first subsection, it must be "by threats of serious harm to, or physical restraint against, that person or another person."[16]  The threat of harm must be "serious," which Congress intended to include cases "where traffickers threaten harm to third persons, restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence."[17]   Under the second subsection, if the means involve a "scheme, plan, or pattern," it must be "intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer *serious harm or physical restraint*."[18]  Multiple circuits have held that under the 2000 version of the statute, serious harm under these provisions includes psychological coercion.[19]  Moreover, the fact that Congress used the term "serious harm" and "physical restraint" together in these clauses suggests that it did not intend to require that serious harm be limited to physical harm.[20]

When Congress amended the statute in 2008, it made this clear by defining "serious harm" as:

---

[15] H.R. CONF. REP. 106-939, at 101 (Oct. 5, 2000); *see also United States v. Calimlim*, 538 F.3d 706, 714 (7th Cir. 2008) ("Section 1589 is not written in terms limited to overt physical coercion, and we know that when Congress amended the statute it expanded the definition of involuntary servitude to include nonphysical forms of coercion.").

[16] 18 U.S.C. § 1589(1).

[17] *United States v. Dann*, 652 F.3d 1160, 1169 (9th Cir. 2011) (quoting H.R. CONF. REP. 106-939, at 101 (Oct. 5, 2000)).

[18] 18 U.S.C. § 1589(2) (emphasis added).

[19] *United States v. Nnaji*, 447 F. App'x 558, 559 (5th Cir. 2011); *United States v. Bradley*, 390 F.3d 145, 150 (1st Cir. 2004), *vacated on Booker grounds*, 543 U.S. 220 (2005); *Calimlim*, 538 F.3d at 712; *United States v. Paulin*, 329 F. App'x 232, 234 (11th Cir. 2009); *see also United States v. Sou*, No. 09-00345, 2011 WL 3207265, at *4 (D. Haw. July 26, 2011) (considering the ordinary meaning of "harm" according to dictionary definitions, which includes but is not limited to physical harm).

[20] *See, e.g.*, *Sou*, 2011 WL 3207265, at *3; *United States v. Murra*, No. 16-00078, 2016 WL 10953910, at *2 (N.D. Tex. July 6, 2016).

> [A]ny harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.[21]

The government urges that this definition did not change the law; it merely clarified the meaning of serious harm that applied before the amendment.  The Court agrees.

This definition tracks the ordinary meaning of "serious harm" that courts applied before 2008,[22] which includes *both* physical and nonphysical harm, and is in line with Congress's decision to enact the TVPA in response to the Supreme Court's decision in *Kozminski*.  It is also consistent with courts' application of a reasonable person standard to the inquiry that takes into account the victim's "special vulnerabilities."[23]  As the First Circuit explained in *United States v. Bradley*:

> The test of undue pressure is an objective one, asking how a reasonable employee would have behaved; to rely upon some hidden emotional flaw or weakness unknown to the employer would raise various problems (e.g., scienter).  But, as the defendants concede, known objective conditions that make the victim especially vulnerable to pressure (such as youth or immigrant status) bear on whether the employee's labor was "obtain[ed]" by forbidden means.[24]

It is also well established that evidence of a "climate of fear" that coerces victims into performing labor satisfies the means element of the offense under both the forced labor statute

---

[21] 18 U.S.C. § 1589(c)(2) (2008).

[22] *See supra* note 19.

[23] *See, e.g.*, *Calimlim*, 538 F.3d at 713 ("A statement is a threat if a reasonable person would believe that the intended audience would receive it as a threat, regardless of whether the statement was intended to be carried out."); *Bradley*, 390 F.3d at 153 (finding no plain error with a jury instruction stating objective test for fear of serious harm that is "reasonable for an individual with [the person's] special vulnerabilities").

[24] *Bradley*, 390 F.3d at 153 (citations omitted).

and the sex trafficking provision of the TCPA,[25] which was passed at the same time and contains a definition of coercion that tracks the language of the means element of the forced labor statute.[26]

The Court finds that the evidence identified by the government in its motion in limine is admissible as intrinsic evidence of the forced labor offenses charged because it supports the means element of the offense.  In the alternative, the evidence is admissible under Rule 404(b).

### a.    Physical Abuse

First, the government catalogues in its motion evidence of physical abuse by Defendants. This evidence includes physical assaults by Defendants of youth members of the organization, which UNOI members called "punishments."  Multiple witnesses will testify that Majeed ordered and inflicted these punishments on UNOI members, including beatings and fasting requirements.  He inflicted these punishments for violations of UNOI policy such as making sexual comments, watching pornography, and taking food.  Witnesses will testify that Rassoull beat youth members, including requiring members to participate in a "fight club."  Witnesses

---

[25] 18 U.S.C. § 1591; *see Roe v. Howard*, 917 F.3d 229, 235–36 (4th Cir. 2019) (explaining that Congress created forced labor and sex trafficking offenses as part of the TVPA).

[26] *See, e.g.*, *United States v. Wilkins*, 538 F. Supp. 3d 49, 72 (D.D.C. 2021) (considering sex trafficking statute, 18 U.S.C. § 1591, and explaining that "[w]hen evaluating if a defendant exerted coercive force over a complainant, juries are thus directed to evaluate the totality of a defendant's conduct toward a trafficking victim, including any threats or specific instances of past violence that may have created a 'culture of fear' such that the victim's conduct was rendered involuntary."); *United States v. Aman*, No. 19-CR-85, 2022 WL 3371320, at *12 (E.D. Va. Aug. 16, 2022) (citations omitted) (finding evidence of abuse, even if not explicitly connected to the labor provided, contributed to climate of fear used to coerce victim into labor); *United States v. Wysinger*, No. 17-CR-00022, 2018 WL 4956515, at *4 (W.D. Va. Oct. 12, 2018) (explaining that evidence of threats "is relevant to show the climate of fear [the defendant] created, which goes directly to the element that he used threats and coercion to get women working for him in prostitution and to intimidate them from reporting him to the police, as referenced in the indictment."); *Marcus v. United States*, No. 14-CV-5780, 2015 WL 3869689, at *10  (E.D.N.Y. June 22, 2015) (considering in the context of an ineffective assistance claim, trial counsel's failure to object to certain "climate of fear" evidence that the government relied on to prove the means element of the offense, and how it "was necessary and appropriate to explain" why the plaintiff stayed with the petitioner and engaged in labor); *United States v. Askarkhodjaev*, No. 04-CR-W-ODS, 2010 WL 11541630, at *2 (W.D. Mo. Oct. 12, 2010) (finding "climate of fear" evidence beyond expert testimony on forced labor charge would not be cumulative); *United States v. Kelly*, No. 07-CR-374, 2008 WL 5068820, at *6 (E.D.N.Y. July 10, 2008) (collecting cases).

will testify that Hadley frequently imposed punishments and discipline at the Kansas City headquarters, and that he did so with approval from Majeed.  Witnesses will testify that Daniel Aubrey Jenkins was known to issue and perform "FOI Beatdowns," or physical assaults, of male youth members, some of which required weeks of healing.  Witnesses will testify that Staton participated in physical abuse, including locking an asthmatic youth member in an attic without access to her inhaler.  And witnesses will testify that Peach participated in physical beatings of female members, imposed fasting requirements on youth members, and provided alcohol and colonics to young children.

This evidence supports the government's burden to show that Defendants obtained labor as part of a scheme, plan, or pattern intended to cause UNOI members to believe that non-performance would result in serious harm to, or physical restraint against, themselves or any other person.  This evidence meets several indices of intrinsic evidence—it is 'inextricably intertwined' with the charged conduct, it occurred within the same time frame as the activity in the conspiracy being charged, it provides direct proof of each defendant's involvement with the forced labor crimes, it is relevant background information that is directly connected to the factual circumstances of the forced labor crimes, and  it is necessary to provide the jury with background and context of the nature of each defendant's relationship to his accomplices.  The evidence supports the means element of the offense, which the government intends to establish by showing that the victims reasonably feared punishments for non-performance of labor, and by proving that the organization created a "climate of fear" that coerced UNOI members into performing labor.

Defendants argue that the government's evidence of physical abuse is not intrinsic because it is not tied to the labor performed by the victims.  According to Defendants, the alleged

violence was imposed in the context of school discipline, not as discipline for behavior while performing labor.  Defendants urge that physical violence is only admissible if it is shown to be directly tied to punishment for the non-performance of labor.

Defendants construe the statute too narrowly.  Section 1589 only requires the government to show that Defendants secured labor either through threats of serious harm or physical restraint, or through a scheme, plan, or pattern intended to cause the victim to believe that non-performance would result in serious harm; it does not require a "quid pro quo" showing of nexus.[27]  In fact, in *United States v. Marcus*, the Eastern District of New York instructed the jury that:

> [T]he government was not required to link specific threats or actions taken against [the victim] to particular labor tasks she performed.  Instead, the government needed to establish that there was a connection between the threats made or physical restraint by the defendant and the labor and services she rendered.  Thus, the government could satisfy the second element by showing a connection between punishments imposed by the defendant and the labor or services at issue or a climate of fear that was sufficient to cause her to perform labor or services against her will.[28]

The government intends to prove at trial that the organization used the school as a way to entice parents to send youth members to the organization, at which point the youth members would be

---

[27] *See United States v. Toure*, 965 F.3d 393, 401–02 (5th Cir. 2020) (considering sufficiency of the evidence on appeal of a forced labor conviction and finding that physical acts of violence not directly tied to the victim's own labor "caused [the victim] to remain with the defendants because she faced threats of serious harm, or reasonably believed she would face serious harm, if she did not provide them with her labor and services."); *see also United States v. Kalu*, 791 F.3d 1194, 1212 (10th Cir. 2015) (considering 2008 version of the statute and holding "[t]he evidence at trial demonstrated Mr. Kalu repeatedly threatened the foreign nationals with legal action, revocation of their visas, deportation, and financial ruin, and some individuals testified he put them in fear of physical harm. These are precisely the types of threats that could 'compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.'"); *see also United States v. McIntyre*, 612 F. App'x 77, 80 (3d Cir. 2015) (explaining that coercion under § 1591(a), even before the 2008 amendments, "does not require the direct cause-and-effect connection [the defendant] posits.").

[28] *United States v. Marcus*, 487 F. Supp. 2d 289, 310 (E.D.N.Y. 2007), *vacated*, 538 F.3d 97 (2d Cir. 2008), *rev'd*, 560 U.S. 258,(2010), and *aff'd in part, vacated in part, remanded on other grounds*, 628 F.3d 36 (2d Cir. 2010).

required to work at businesses owned and run by the organization. Given the alleged symbiotic relationship between the organization's school and businesses, the government has sufficiently proffered a nexus between the physical violence it intends to present and the performance of labor.

Defendants' other arguments on this point all focus on the sufficiency and weight of the government's evidence, rather than its admissibility. These arguments do not justify a wholesale exclusion of physical abuse evidence in limine. Defendants are free to challenge the sufficiency of this evidence at trial.

The Court is satisfied that the evidence of physical abuse discussed above is admissible as intrinsic evidence. Alternatively, this evidence is admissible under Rule 404(b) because even if not intrinsic, it is relevant for the reasons described above and is offered for a proper purpose—opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

### b.      Sexual Abuse and Forced Marriage[29]

The government seeks to admit evidence that Daniel Aubrey Jenkins engaged in sexual relationships with minor female youth members who were not old enough to consent. The government also intends to present evidence that the Royall family arranged marriages, including Daniel Aubrey Jenkins' marriage to a 16-year-old youth member. Like the evidence of physical abuse, this evidence is intrinsic to the offenses charged because it supports the means element of the offense, including the government's showing of the organization's "climate of fear." In particular, given that the means element takes into account the special circumstances of the

---

[29] The Court's ruling on this evidence also applies to Defendants' motion in limine to exclude evidence about sexual abuse and/or underage marriage within UNOI. Doc. 238 at 4–6.

victims—in this case they are mostly minors—evidence of forced marriage and sexual abuse of minors is particularly probative on the issue of coercion when viewed through a reasonable person with special vulnerabilities such as being female and/or minor.  This evidence therefore provides direct proof of Daniel Aubrey Jenkins' and other co-conspirators' involvement with the forced labor crimes, is relevant background information directly connected to the factual circumstances of the forced labor crimes, and is necessary to provide the jury with background and context of the nature of Daniel Aubrey Jenkins' and the co-conspirators' relationship with one another.

Even if the Court found that the evidence was extrinsic, it would be admissible under Rule 404(b) because it is offered to show intent, preparation, plan, knowledge, and absence of mistake.  It is also relevant to the means element of the offenses because it is part of the climate of fear evidence that bears on whether the UNOI organization's conduct would compel a reasonable person of the same background and in the same circumstances of the victims in this case to perform or to continue performing labor or services in order to avoid incurring certain harms.

### c.      Threats of Serious Harm

Next, the government seeks to admit evidence that UNOI and Defendants used their common beliefs and practices to promote and justify their crimes as part of the "scheme, plan, or pattern" means under the statute.  In particular, the government cites testimony that UNOI leaders told witnesses that they would "burn in eternal hellfire" if they did not comply with UNOI policies and practices, or if they left the organization.  Witnesses will testify that Royall Jenkins and Daniel Aubrey Jenkins told members that certain other members died or would die, or became seriously ill, because they left the organization.

This evidence is clearly intrinsic to the means element of the offense.  The government's evidence primarily consists of verbal threats, which support the "climate of fear" showing that the government intends to present.  This evidence helps demonstrate the plan, scheme, or pattern that the government contends would compel a reasonable person of the same background and in the same circumstances of the victims in this case to perform or to continue performing labor or services in order to avoid incurring certain harms.  Specifically, this evidence is probative of why the victims did not feel that they could voluntarily leave the organization.  Alternatively, this evidence is offered for a proper purpose under Rule 404(b) because it is probative of intent, preparation, plan, knowledge, and of the means element of the offense.

Defendants argue that excommunication and "eternal damnation" do not qualify as "serious harm" under the forced labor statute, and that warnings about losing contact with family and friends is not a "threat."  Moreover, Defendants argue that the First Amendment protects religious organizations like UNOI in creating codes of conduct and consequences for failure to comply with religious practices.  If not, most religious organizations would be subject to criminal liability.  The Court disagrees.

Defendants primarily rely on a Ninth Circuit case brought under the TVPA's civil enforcement provision involving the Church of Scientology—*Headley v. Church of Scientology International*.[30]  This case was on appeal following a summary judgment ruling in favor of the Church under the ministerial exception to the forced labor claims.[31]  The Ninth Circuit did not reach the ministerial exception because it found that the record did not support the means element of the plaintiffs' claims.[32]  The court found that the Church's threats that the plaintiffs

---

[30] 687 F.3d 1173 (9th Cir. 2012).

[31] *Id.* at 1179.

[32] *Id.*

would be deemed "suppressive persons" and therefore lose contact with family and friends were "permissible warnings of adverse but legitimate consequences," rather than improper threats of serious harm.[33]  Moreover, the court determined that the record showed that "the discipline, lifestyle, and familial constraints imposed" by the organization caused the plaintiffs to leave the organization rather than continue to labor there.[34]

The Ninth Circuit's ruling in *Headley* fails to demonstrate that the evidence at issue in this case should be excluded.  First, *Headley* has no bearing on admissibility.  The court considered evidence that plaintiffs "had innumerable opportunities to leave the defendants[,] . . . [yet]  chose instead to stay with the defendants and to continue providing their ministerial services."[35]  The court's holding was limited to examining the weight of the evidence that there was a threat of serious harm in the context of the summary judgment burden in a civil case.  And this makes sense because whether a victim's "continued acquiescence to servitude was objectively reasonable under the circumstances . . . is an intensely factual issue that may only be decided after a trial."[36]  The Court declines to hold that, as a matter of law, the government's proffered evidence of verbal threats is insufficient to meet its burden.

Second, the plaintiffs in that case were adults, whereas here, the government proffers evidence that the minor victims were threatened with excommunication from their parents and other family members.   A reasonable jury could consider this special vulnerability and find that the freedom of choice discussed in *Headley* does not apply to minors the way it might to adult

---

[33] *Id.* at 1180.

[34] *Id.*

[35] *Id.* at 1180–81.

[36] *United States v. Raniere*, 384 F. Supp. 3d 282, 313 (E.D.N.Y. 2019) (alteration omitted) (internal quotation omitted).

members.  Third, the government proffers that the verbal threats in this case went well beyond excommunication; some of the threats also involved death or serious illness.

There is also no basis for excluding the government's evidence of verbal threats under the First Amendment.  Defendants argue that the means element of the statute must be based on more than the enforcement of religious doctrine, and that fear of what may happen in the afterlife may not, as a matter of law, constitute "serious harm" under the statute without running afoul of the First Amendment.  But Defendants offer no authority for these propositions other than *Headley*, which is distinguishable, as described above.  Defendants offer no argument on the test that would apply here if they properly raised either a facial or as-applied challenge to the forced labor statute under the First Amendment.[37]  The Court declines to broadly consider Defendants' motions as raising such a challenge based on the limited argument offered.  For all of the reasons discussed above, the government may offer evidence at trial that UNOI and Defendants used their common beliefs and practices to promote and justify their crimes as part of the "scheme, plan, or pattern" means under the statute.  In the alternative, this evidence is relevant and offered for a proper purpose because it also goes to show motivation, intent, preparation, plan, and knowledge.

### d.      Emotional and Psychological Abuse

---

[37] *See, e.g.*, *United States v. Friday*, 525 F.3d 938, 946 (10th Cir. 2008) (considering facial and as-applied challenge to charges under the Bald and Golden Eagle Protection Act based on the Religious Freedom and Restoration Act, which provides that the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability. . . .  [unless it] demonstrates that application of the burden . . . is in furtherance of a compelling governmental interest; and . . . is the least restrictive means of furthering that compelling governmental interest." (citing 42 U.S.C. § 2000bb-1(a)–1(b))); *United States v. Calimlim*, 538 F.3d 706, 712 (7th Cir. 2008) ("As we said, § 1589 does not criminalize any speech; it bans behavior that may involve speech. This blunts any overbreadth attack.  Because of the *scienter* requirement, any speech involved must be a threat or else intended to achieve an end prohibited by law." (citation omitted)).  The Court has already rejected Defendants' facial and as-applied challenges under the First Amendment, and incorporates by reference its decision denying Defendants' motion to dismiss to the extent they seek to resurrect that argument here. Doc. 207-1 at 4–8.

Next, the government seeks to admit evidence of emotional and psychological abuse of victims and other UNOI members in support of the means element of the offense.  The government will offer testimony from multiple witnesses that Defendants and Royall Jenkins led conference calls and weekly public meetings called "math class," during which they publicly humiliated members who broke rules, made mistakes at work, or were deemed overweight. These witnesses will testify that the methods used during calls and meetings instilled fear in UNOI members.  Defendants respond that none of this evidence is linked to obtaining labor, therefore it holds no probative value.  The Court disagrees.

As described earlier, the forced labor statute encompasses psychological harm, and the government's climate of fear theory is permissible in showing that the means element has been met.  Moreover, the statute does not require the tight showing of nexus between obtaining forced labor and emotional humiliation urged by Defendants.  Instead, the government simply must "establish that there was a connection between the threats made or physical restraint by the defendant and the labor and services . . . rendered."[38]  The government proffers that "math class" was not a class offered by the organization that was entirely separate from the businesses for which the victims in this case worked.  The government claims that these were weekly public meetings used for the express purpose of humiliating members not just for infractions that may have happened at school, but also for "transgressions" related to their labor.  Examples provided by the government include dropping a bag of flour, spilling food, damaging property, leaving out a pot of beans, burning a pie, and failing to make sales.

---

[38] *United States v. Marcus*, 487 F. Supp. 2d 289, 310 (E.D.N.Y. 2007), *vacated,* 538 F.3d 97 (2d Cir. 2008), *rev'd,* 560 U.S. 258 (2010), and *aff'd in part, vacated in part, remanded on other grounds,* 628 F.3d 36 (2d Cir. 2010).

The government also asserts that UNOI's school was not separate from its businesses.  In fact, the Indictment alleges that UNOI obtained labor from its members' children by encouraging members to send their children to the organization's Kansas City school, but did not inform parents that their children would be working for the UNOI businesses, sometimes instead of attending school, and sometimes in other locations around the country.  These youth members resided in crowded conditions, followed a strict diet, and worked long hours.  The weekly "math class" meetings were used as an opportunity for discipline for infractions against the organization's members as a whole, whether it was school, business, or dietary.  The Indictment alleges a connection between the emotional abuse and obtaining labor, and the government proffers that the evidence will support this connection.  The Court therefore finds that this evidence is intrinsic to the forced labor offense.  In the alternative, this evidence is probative of the means element of the offense and offered for a proper purpose under Rule 404(b) since it goes to opportunity, intent, preparation, plan, knowledge, and absence of mistake.

### e.        Isolation and Kidnapping

The government seeks to admit evidence that UNOI members used isolation and acts of kidnapping, or involuntarily relocating victims and members, as part of the climate of fear that caused UNOI members to perform labor.  Defendants do not specifically respond to this category of evidence.

The Court finds that this evidence is intrinsic to the forced labor offense, and that it is admissible in the alternative under Rule 404(b).  Again, this evidence is probative of the means element of the offense because it is part and parcel of the climate of fear theory advanced by the government to support its showing of a scheme, pattern, or plan to compel labor.  This evidence is particularly probative because it explains why parents often did not remove their children from

the organization.  The proffered evidence is that some parents were unable to locate their children, were blocked from doing so, were unable to visit their children, and were threatened if they removed their children.  The Court easily finds that isolation and kidnapping of minor victims supports the means element of the offense, and is probative and offered for a proper purpose under Rule 404(b) since it goes to opportunity, intent, preparation, plan, knowledge, and absence of mistake.

### f.     Unauthorized Use of Credit Cards and Possession of Identification Documents

The government seeks to admit evidence that Defendants engaged in the unauthorized use of member and victim credit cards, identity documents, and other benefits.  According to the government, this conduct allowed Defendants to assert control over UNOI members, and also shows their intent to profit.  Defendants assert that UNOI's retention of documents does not constitute "serious harm" under the statute and that there is no evidence UNOI conditioned return of the documents to the victims' labor.

Again, the Court finds that this evidence is intrinsic to the means element of the offense. In considering the means element, the finder of fact must consider the special vulnerabilities of the victims that are known to the Defendants.  Here, many of the victims are alleged to be minors.  Evidence that Defendants confiscated identity documents and credit cards is relevant to explain why the victims were compelled to perform labor rather than leave the organization. Without these documents, particularly for the minors, the victims were not in a position to leave, financially or otherwise.[39]  And the fact that most of the victims were minors calls into question Defendants' contention that these documents were voluntarily turned over to the organization.

---

[39] *See United States v. Dann*, 652 F.3d 1160, 1171 (9th Cir. 2011) (finding means evidence that the defendant intended the victim to believe she would suffer serious financial harm if she were to leave was sufficient for conviction).

Defendants' arguments to the contrary go to the weight and not the admissibility of the evidence. Moreover, this evidence works together with the other climate of fear evidence offered by the government, which is intrinsic to the forced labor charges. Even if this evidence was not intrinsic, the Court would find that it is relevant and offered for a proper purpose—motive, intent, and knowledge.

### g.    Other Conduct

Finally, the government seeks to admit evidence of certain "other conduct" as intrinsic, or alternatively, under Rule 404(b). MV8 is expected to testify that Staton provided her with a fake identification document showing that she was older than she was, so that she could enter a clothing show in Las Vegas when she was working for a UNOI clothing business. Defendants respond that this evidence is not probative because there is no nexus with MV8's performance of labor, or how this conduct instilled fear in MV8. But, as described in the preceding sections, this evidence is not offered in a vacuum. It is offered in conjunction with evidence that other victims were also directed to lie about their ages in order to avoid detection by authorities. And it is offered in conjunction with evidence about the climate of fear that UNOI cultivated in order to compel victims to perform labor. The Court finds that this evidence is intrinsic because it goes to the means element of the offense, and it provides important context and background about the way UNOI operated. To the extent this evidence is not intrinsic, it is admissible under Rule 404(b) because it is relevant to the climate of fear theory of coercion, and it is offered to show knowledge of the laborers' ages, and the fact that they were not old enough to be laboring.

### 3.    Admissibility Under Rule 403

Defendants argue that the evidence offered by the government as intrinsic or as other acts under Rule 404(b) is subject to exclusion under Rule 403 because its probative value is

substantially outweighed by its prejudicial effect.  For the reasons already discussed, the Court finds that the probative value of the government's evidence is extremely high because it tends to show that UNOI created a climate of fear that compelled the victims to labor.  The probative value of the evidence is illustrated by the arguments Defendants offer in favor of exclusion— they argue almost exclusively that this evidence is not sufficient because it is not strong enough, or because there is an insufficient nexus between the type of abuse alleged and the labor rendered.  All of this evidence is offered in the aggregate to support the government's burden of showing the means element of the offense.  Moreover, the Court agrees with the government that the complexity of this case, in terms of the conspiracy's length of time, the number of victims, and the geographic scope of activity, justifies the robust climate-of-fear showing that the government intends to present to meet its burden of proof.

Having found this evidence highly probative of the means used to obtain forced labor, the Court must next consider whether it nonetheless must exclude any of the proffered evidence because "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[40]  "Unfair prejudice" under the rule means "an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one."[41]  "In engaging in the requisite balancing, [the Court] 'give[s] the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.'"[42]  And the Court must remain mindful that "it is not enough that the risk of unfair prejudice be greater than the probative value

---

[40] Fed. R. Evid. 403.

[41] Fed. R. Evid. 403 advisory committee note.

[42] *United States v. Cerno*, 529 F.3d 926, 935 (10th Cir. 2008) (quoting *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1274 (10th Cir. 2000)).

of the evidence; the danger of that prejudice must *substantially* outweigh the evidence's probative value."[43]  Exclusion under Rule 403 "is an extraordinary remedy and should be used sparingly."[44]

First, Defendants argue that the evidence cited by the government has low probative value because of the attenuated nexus between the Defendants' conduct and the labor rendered, which is substantially outweighed by its prejudicial effect.  As discussed already, the Court finds this evidence has a high probative value.  The government only must show a connection between the physical or psychological abuse, isolation, kidnapping, or threats imposed by Defendant and the labor or services performed, or it must show a climate of fear that caused the victims to perform labor or services against their will.  The government has proffered evidence sufficient to support this link and the Court considers its maximum reasonable probative force balanced against the minimum reasonable prejudicial value.  Any prejudicial effect of the evidence "stems from the legitimate probative force of the evidence and is directly related to the central question in this case."[45]

Defendants next claim that because the involuntary servitude statute requires physical coercion under *Kozminski*, the forced labor statute is focused more on nonphysical forms of coercion; therefore, the probative value of physical and sexual assault evidence carries less weight under the forced labor statute.  The Court disagrees.  As discussed in the Court's analysis

---

[43] *United States v. Henthorn*, 864 F.3d 1241, 1256 (10th Cir. 2017) (quoting *Cerno*, 529 F.3d at 935).

[44] *United States v. Silva*, 889 F.3d 704, 712 (10th Cir. 2018) (quoting *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001)).

[45] *United States v. Wilkins*, 538 F. Supp. 3d 49, 73 (D.D.C. 2021) (considering motion in limine in sex trafficking case and admitting evidence of physical and sexual violence as highly probative because it is intrinsic and not substantially outweighed by risk of unfair prejudice).

of the forced labor statute's means element, serious harm under the statute includes both physical and nonphysical harm.

Defendants finally claim that the evidence is cumulative. They suggest that the government should be limited to the evidence of coercion referenced in the Indictment; if the government proves its case based on that evidence, the evidence of physical and psychological abuse discussed in the motion would be cumulative. The Court will not cabin the government's climate of fear analysis as proposed by Defendants. Again, given the complexity, size, and temporal and geographical scope of the conspiracy alleged in the Indictment, the government must be allowed to put on evidence that under the totality of the circumstances a climate of fear compelled the victims to perform labor. This climate of fear includes all of the forms of evidence discussed herein, and the Court finds that the probative value of this evidence in the aggregate goes to an element of the offense and is thus highly probative. Again, any cumulative or prejudicial effect is directly tied to the probative value of the evidence and thus, the Court cannot find that it substantially outweighs the probative value of the evidence.

In sum, the government's motion in limine to admit direct and intrinsic evidence is granted. Defendants' motion to exclude this evidence, including evidence of forced marriage, is denied.

### B.     Defendants' Motions to Exclude Based on Timing

Defendants next move to exclude testimony and evidence based on the effective dates of the forced labor statute and amendments, and the statute of limitations.

#### 1.     Defendants' Motion to Exclude Testimony About Events Before October 28, 2000

The Indictment alleges a conspiracy to commit forced labor between October 28, 2000, and November 30, 2012. Defendants move to exclude evidence about events that precede the

effective date of the statute—October 28, 2000.  They argue that it would be an ex post facto violation for the Court to admit evidence of events occurring before the conspiracy allegedly began, or alternatively, it would pose a due process violation, because there is a risk the jury could convict Defendants based solely on pre-enactment conduct that is not criminal.  The government responds that evidence of pre-enactment conduct may be relevant to the crimes charged, and the Court can instruct the jury in a manner that guards against any danger of a conviction based solely on pre-enactment conduct.  Alternatively, the government moves for admission under Rule 404(b).

The Supreme Court considered this issue in *United States v. Marcus*,[46] where the defendant was alleged to have engaged in a forced labor and sex trafficking conspiracy between January 1999 and October 2001.  At trial, the government presented evidence pertaining to the entire period and a jury found him guilty on both counts.[47]  The district court did not give a jury instruction limiting the jury's consideration to conduct that happened after the October 28, 2000 effective date of the TVPA.[48]  The parties agreed that the conviction could not rest exclusively on the defendant's pre-enactment conduct, but they disputed which standard of review applied given that the defendant raised it for the first time on appeal.[49]  The Second Circuit applied the plain error standard and held that "even in the case of a continuing offense, if it was possible for the jury—wh[ich] had not been given instructions regarding the date of enactment—to convict

---

[46] 560 U.S. 258 (2010).

[47] *Id.* at 260.

[48] *Id.*

[49] *Id.* at 261.

exclusively on pre-enactment conduct, then the conviction constitutes a violation of the Ex Post Facto Clause."[50]  Thus, the Second Circuit reversed the defendant's conviction.[51]

The Supreme Court reversed the Second Circuit, finding that the Second Circuit misapplied the plain error standard, and that there was no structural error.[52]  The Supreme Court explained that the error "created a risk that the jury would convict respondent solely on the basis of conduct that was not criminal when the defendant engaged in that conduct. A judge might have minimized, if not eliminated, this risk by giving the jury a proper instruction."[53]  The Court also disagreed with the defendant's and the Second Circuit's characterization of the error as an ex post facto violation.[54]  Instead, "if the jury, which was not instructed about the TVPA's enactment date, [and] erroneously convicted [the defendant] based exclusively on noncriminal, preenactment conduct, [the defendant] would have a valid due process claim."[55]

On remand, the Second Circuit applied plain error review consistent with the Supreme Court's guidance, which required it to consider whether the error was prejudicial based on a "reasonable probability that the error affected the outcome of the trial."[56]  The court found that the defendant failed to make this showing because the government presented evidence of post-enactment conduct sufficient to satisfy the elements of the offense, and because there was "no

---

[50] *United States v. Marcus*, 538 F.3d 97, 101 (2d Cir. 2008)).

[51] *Id.* at 101–02.

[52] 560 U.S. at 263.

[53] *Id.* at 263–64.

[54] *Id.* at 264.

[55] *Id.*

[56] *United States v. Marcus*, 628 F.3d 36, 42 (2d Cir. 2010) (quoting 560 U.S. at 262).

reasoned basis to differentiate between [the defendant's] pre- and post-enactment conduct."[57] Thus, the court affirmed the defendant's conviction under § 1589.[58]

Here, unlike in *Marcus*, the Indictment alleges that the conspiracy began on October 28, 2000, the same date § 1589 became effective.  Nonetheless, the government alleges that the charges relate to and are a part of a continuing course of conduct that started before and continued past October 28, 2000, and it intends to put on evidence about pre-enactment conduct. The government contends that any risk of conviction based solely on pre-Indictment conduct can be avoided with a limiting instruction.  The Court agrees.

Defendants state in their motion that discovery "contains witness statements discussing incidents and events beginning in the mid- to late-1990s, when they joined UNOI."[59]  But they fail to identify any specific evidence of pre-enactment conduct that they maintain could make it likely that the jury would find guilt solely based on such conduct, as opposed to evidence of post-enforcement conduct.  Based on the strong evidence of post-enactment conduct cited by the government so far, the Court is satisfied that any risk of the jury convicting Defendants based solely on pre-enactment conduct can be cured with a limiting instruction.[60]  Defendants' motion to exclude evidence of Defendants' conduct before October 28, 2000 is therefore denied, subject to contemporaneous objection if specific evidence is offered at trial that Defendants claim would change the Court's analysis above.

   **2.    Defendants' Motion to Exclude Testimony or References to "Force, Threats of Force, Physical Restraint, and Threats of Physical Restraint" Prior to December 23, 2008**

---

[57] *Id.* at 43.

[58] *Id.* at 45–46.

[59] Doc. 251 at 3.

[60] *See United States v. Thornburgh*, 645 F.3d 1197, 1211–12 (10th Cir. 2011) (finding no plain error and no due process violation despite lack of limiting instruction where "[t]here was substantial evidence that the conspiracy continued long after [the statute] went into [e]ffect.").

Next, Defendants argue that the Court should exclude evidence of conduct that does not relate to the means stated in the 2000 version of § 1589; specifically, evidence that Defendants slapped, spanked, or otherwise struck the alleged victims, insofar as serious harm or physical restraint was not incurred or threatened.  Defendants argue that absent this ruling in limine, there is a substantial risk that Defendants could be convicted on the basis of pre-enactment conduct. The Court disagrees.

As the Court has already explained in detail, the 2000 version of the statute includes means that capture both physical and nonphysical coercion.  Although the original statute did not include the language "force, threats of force, physical restraint" or an explicit definition of "serious harm," courts have interpreted the 2000 version of the statute to encompass such prohibited means.  Courts also applied the same definition of "serious harm," before and after the statute was amended in 2008.  And legislative history supports the contention that a § 1589 violation can be established through evidence of physical abuse that occurred prior to 2008.  For all of these reasons, Defendants' motion to exclude evidence of physical harm incurred before December 23, 2008 is denied.

### 3.  Defendants' Motion to Exclude Acts of Forced Labor Outside of the Statute of Limitations

Majeed, joined by all Defendants, moves to exclude evidence based on a statute-of-limitations defense.  They ask the Court to exclude any acts of forced labor before October 20, 2011 (ten years prior to the date the Indictment was filed), relating to UNOI individuals who were at least 18 years' old before October 21, 2011; and acts of forced labor before October 20, 2011, relating to UNOI individuals who were under 18 years' old before October 21, 2011, unless they suffered from sexual or physical abuse.  Majeed provides no argument in his motion

seeking to exclude this evidence, but he cites 18 U.S.C. § 3298, which provides for a ten-year statute of limitations for violations of the forced labor statute, and 18 U.S.C. § 3509(a)(4), which defines "physical violence."

The Court ruled on the statute-of-limitations issues in the context of Defendants' motions to dismiss the Indictment.[61]  The Court found the conspiracy and substantive forced labor counts were all continuing offenses for purposes of the statute of limitations, so the statute did not begin to accrue until the conduct ran its course, which the Indictment alleges was after October 20, 2011.  The Court made clear that it will be the government's burden to prove the timing of the conspiracy at trial.  The government may also prove that an extended statute of limitations applies under 18 U.S.C. § 3283 if the offenses involve sexual or physical abuse, or kidnapping of a child under the age of 18 years.  It will be Defendants' burden to demonstrate withdrawal from the conspiracy before October 20, 2011, if they choose to pursue withdrawal defenses.  The Court declines to preclude either side from presenting evidence on these issues.  Likewise, the parties may challenge the sufficiency of the evidence on these issues under Fed. R. Crim. P. 29. Defendants' motion to exclude evidence based on the statute of limitations is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that the government's Motion in Limine to Admit Evidence as Direct and Intrinsic Evidence, or Alternatively Under Rule 404(b) (Doc. 233) is **granted**; the Government's Motion to Disclose Expert Out of Time (Doc. 262) is **granted**; the Government's Sealed Motion in Limine to Exclude Evidence and Testimony (Doc. 260) is **granted**; Defendant Kaaba Majeed's Motion in Limine (Doc. 247) is **denied**; Defendant James Staton's Motion in Limine (Doc. 238) is **granted in part and denied in part**; Defendant Randolph Rodney Hadley's Motion in Limine (Doc. 250) is **denied**; Defendant Daniel Aubrey

---

[61] Doc. 206 at 7–14.

Jenkins' Motion in Limine (Doc. 251) is **granted in part and denied in part**, and Defendant

Dana Peach's Motion in Limine (Doc. 252) is **granted in part and denied in part**.

      **IT IS SO ORDERED.**

      <u>Dated: March 6, 2024</u>

                               <u>S/ Julie A. Robinson</u>
                               JULIE A. ROBINSON
                               UNITED STATES DISTRICT JUDGE