## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 21-20060-JAR** |
| **KAABA MAJEED,** | |
| **YUNUS RASSOUL, a.k.a. Yunus Rassoull,** | |
| **JAMES STATON, a.k.a. Adam Winthrop,** | |
| **RANDOLPH RODNEY HADLEY,** | |
| **DANIEL AUBREY JENKINS,** | |
| **DANA PEACH,** | |
| **ETENIA KINARD, a.k.a. Etenia Kinnard, and** | |
| **JACELYN GREENWELL,** | |
| **Defendants.** | |

### MEMORANDUM AND ORDER

The government filed an eight-count Indictment on October 20, 2021, against eight

Defendants belonging to the United Nation of Islam ("UNOI") organization, alleging a claim

against all Defendants for conspiracy to commit forced labor in violation of 18 U.S.C. §§ 371

and 1589, and alleging seven counts of substantive forced labor violations under 18 U.S.C. §§

1589, 1594(a), and 2.[1]  Six Defendants—Kaaba Majeed, Yunus Rassoul, James Staton, Randolph

Rodney Hadley, Daniel Aubrey Jenkins, and Dana Peach—are set for trial on August 1, 2024.

At a pretrial motions hearing on June 26, 2023, the Court granted Rassoul's Motion for

*James* Hearing, which was joined by all Defendants.[2]  The government filed a Pre-Hearing

Memorandum and Proffer Pursuant to Rule 801(d)(2)(E),[3] which it supplemented on July 1,

---

[1] On July 24, 2024, the Court granted the government's unopposed motion to dismiss Count 5, one of the substantive forced labor counts.  Doc. 391.

[2] Doc. 156.

[3] Doc. 249.

2024.[4]  These documents set forth a summary of evidence the government intends to present in support of admitting coconspirator statements as an exclusion to the rule against hearsay.  On July 22, 2024, the Court conducted a *James* hearing, and the government and Jenkins submitted post-hearing briefs.[5]  Rassoul, Staton, and Peach join in Jenkins' post-hearing brief.[6]  For the reasons discussed below, the Court finds that the categories of coconspirator statements set forth by the government are admissible under Rule 801(d)(2)(E), subject to contemporaneous objection at trial.

## I.    Background

Prior to the hearing on motions in limine on February 2, 2024, the government filed its proffer, and provided the Court with a disc containing hundreds of e-mail exhibits that include coconspirator statements.  After reviewing the proffer, the Court entered a Memorandum and Order on March 7, 2024, finding that a full *James* hearing was required in order to make the necessary predicate findings on the admissibility of coconspirator hearsay statements.[7]

At the July 22 hearing, FBI Special Agent Leena Ramana testified about the alleged conspiracy in this case, the members of the conspiracy, and the types of statements investigators obtained from their witness interviews.  The Court also admitted Government Exhibit 1, the United Nation of Islam ("UNOI") organizational chart; and Defendant Rassoul's Exhibit 1, his Affidavit.  After the hearing, Defendant Jenkins supplemented the record with a recording of a

---

[4] Doc. 325.

[5] Docs. 389, 395.

[6] Docs. 393, 398.

[7] Doc. 318.

speech delivered by unindicted coconspirator Royall Jenkins on March 30, 2008, where he stated that he intends to remove Defendant Jenkins from UNOI the following day.[8]

## II.    Standard

Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."[9]  Hearsay is generally inadmissible,[10] but exclusions and exceptions may apply.[11]  A statement is admissible non-hearsay if it is "offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy."[12]  In order to admit out-of-court statements under this exclusion from the hearsay rule, the Court "must find by a preponderance of the evidence that (1) a conspiracy existed, (2) the declarant and defendant were both members of the conspiracy, and (3) the statement was made in the course of and in furtherance of the conspiracy."[13]  The government, as the offering party, bears the burden of proving these predicate findings.[14]

The Tenth Circuit has held that under the Supreme Court's decision in *Bourjaily v. United States*,[15] "there [must] be some independent evidence linking the defendant to the

---

[8] Doc. 383.

[9] Fed. R. Evid. 801(c).

[10] Fed. R. Evid. 802.

[11] Fed. R. Evid. 801(d), 803, 804, 807.

[12] Fed. R. Evid. 801(d)(2)(E).  The government asserts in its proffer that some of the coconspirator statements it intends to offer can be admitted because they are either not offered for the truth of the matter asserted, or are statements of a party opponent.  As the Court previously advised, it does not address those hearsay exclusions pretrial.  Objections on these grounds should be raised contemporaneously.

[13] *United States v. Rutland*, 705 F.3d 1238, 1248 (10th Cir. 2013) (citing *United States v. Urena*, 27 F.3d 1487, 1490 (10th Cir. 1994)).

[14] *United States v. Perez*, 989 F.2d 1574, 1577 (10th Cir. 1993) (en banc) (citation omitted).

[15] 483 U.S. 171, 180 (1987).

conspiracy," but it "need not be 'substantial.'"[16]  "Testimony of a government agent regarding

his interactions or conversations with coconspirators is adequate independent evidence."[17]  The

Court can also consider hearsay evidence, even if it would not be admissible at trial.[18]

## III.  Findings

### A.  Forced Labor Conspiracy

The government must first show by a preponderance of the evidence that a forced labor

conspiracy existed.

> To prove a conspiracy existed, the district court must find by a
> preponderance of the evidence that (1) there was an agreement to
> violate the law, (2) the declarant knew the essential objectives of
> the conspiracy, (3) the declarant knowingly and voluntarily took
> part in the conspiracy, and (4) the coconspirators were
> interdependent.[19]

The Indictment alleges that from at least October 28, 2000, continuing through November

30, 2012, Defendants engaged in a conspiracy in which they procured the unpaid labor of

children for UNOI.  The Court finds that Agent Ramana's testimony supports these allegations

by a preponderance of the evidence.

Agent Ramana testified about Defendants' roles in the conspiracy, and how they assisted

the founder of UNOI, Royall Jenkins, with managing UNOI.  Agent Ramana testified that UNOI

enticed parents to send their children to Kansas City, Kansas, with promises of education and

opportunity, but instead forced members' children to work extended hours without pay and

provided no legitimate education.  Agent Ramana testified that Defendants and their

---

[16] *United States v. Alcorta*, 853 F.3d 1123, 1142 (10th Cir. 2017) (citing *United States v. Owens*, 70 F.3d 1118, 1124–25 (10th Cir. 1995)).

[17] *United States v. Stein*, 985 F.3d 1254, 1269 (10th Cir. 2021) (citing *Owens*, 70 F.3d at 1125).

[18] *Owens*, 70 F.3d at 1124.

[19] *United States v. Rutland*, 705 F.3d 1238, 1249 (10th Cir. 2013) (citing *United States v. Ailsworth*, 138 F.3d 843, 850–51 (10th Cir. 1998)).

coconspirators helped enforce UNOI's strict rules—meals were limited, communications with families and non-members were controlled, minor victims were not allowed to seek outside medical attention, and minor victims were required to work long hours at UNOI businesses, sometimes up to sixteen-hours per day.  There were consequences for children who did not comply with the rules, including psychological and physical abuse, withholding food, silence, and extra work.  Agent Ramana testified that Defendants directed and controlled the whereabouts and unpaid labor of dozens of minor victims, separated them from their families, and subjected them to forced fasting and physical abuse.  The Court finds that the government has shown by a preponderance of the evidence that an ongoing forced labor conspiracy existed between October 28, 2000 and November 30, 2012.

### B.      Membership in the Conspiracy

For each statement, the government must show by a preponderance of the evidence that the declarant and the defendant were both members of the conspiracy.[20]  "A person is a member of a conspiracy if he was aware of the common purpose, willingly participated in the conspiracy, and intended to advance the purpose of the conspiracy."[21]  A person need not be formally charged to be a member of a conspiracy for purposes of this analysis.[22]

Agent Ramana testified about the members of the conspiracy—31 charged and uncharged coconspirators whose statements the government expects may be referenced at trial.  She explained each coconspirator's role in the conspiracy.  The Court finds by a preponderance of the

---

[20] *Alcorta*, 853 F.3d at 1137 (citation omitted).

[21] *Rutland*, 705 F.3d at 1251 (citing *United States v. Suntar Roofing*, 897 F.2d 469, 474–75 (10th Cir. 1990)).

[22] *United States v. Durland*, 575 F.2d 1306, 1309–10 (10th Cir. 1978).

evidence that the individuals listed in the government's proffer and supplement,[23] as testified to by Agent Ramana, were members of the conspiracy.

### C.    Whether Statements were Made in the Course of and in Furtherance of the Conspiracy

The government asserts in its proffer that the anticipated coconspirator statements fall into four broad categories: (1) statements made to execute or transact the business of the conspiracy;[24] (2) statements relating to UNOI recruitment and retention of current members;[25] (3) statements made to keep coconspirators abreast of the ongoing conspiracy's activities;[26] and (4) statements made to conceal the criminal objectives of the conspiracy.[27]

Under Tenth Circuit law, statements made in furtherance of the conspiracy "include[e] those made 'to induce enlistment or further participation in the group's activities; . . . to prompt further action on the part of conspirators; . . . to reassure members of a conspiracy's continued existence; . . . to allay a co-conspirator's fears; and . . . to keep co-conspirators abreast of an ongoing conspiracy's activities.'"[28]  Although "[s]tatements made after the objectives of the conspiracy have either failed or been achieved are not made during the conspiracy and must be excluded, . . . [the] 'conspiracy does not end simply because one conspirator has been arrested.'"[29]

---

[23] Doc. 249 at 8–13; Doc. 325 at 1–6.

[24] The government claims that statements on the following subjects fall into this broad category: (1) psychological manipulation or verbal abuse; (2) subordinating or exerting control; (3) threats of consequences; (4) isolation; (5) punishment; (6) children's work assignments; and (7) the business of the conspiracy.

[25] The government provides examples of false promises and lulling.

[26] The government provides examples of agendas, meetings, and dissemination of information.

[27] The government provides examples of encouraging children to say they are fine if their parents inquire, or asking them to lie about their ages.

[28] *United States v. Alcorta*, 853 F.3d 1123, 1137 (10th Cir. 2017) (omissions in original) (quoting *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc)).

[29] *Id.* (quoting *United States v. Melton*, 131 F.3d 1400, 1405 (10th Cir. 1997)).

### 1.    Categories of Statements

The Court has reviewed the  categories of statements identified by the government in its proffer, and finds that they are of the kind the Tenth Circuit describes as made in the course and in furtherance of the conspiracy.  Defendants argue that the Court cannot make a finding on the in furtherance requirement without examining the actual statements made by the witnesses. While the Court agrees it cannot definitively rule on specific statements on this record,[30] it understands that due to the number of coconspirators, the length and breadth of the conspiracy, and the fact that many of the witnesses are victims, it is virtually impossible for the government to anticipate and proffer most of the specific coconspirator statements anticipated at trial.  To the extent these witnesses testify within the designated topics discussed above, however, the Court provisionally finds that the statements are made in furtherance of the conspiracy. [31]  This ruling is subject to reconsideration if Defendants object contemporaneously to specific statements as either outside these categories of statements, or otherwise not made in furtherance of the conspiracy.

### 2.    Withdrawal

Defendants' objections to coconspirator statements mostly focus on the timing of the statements, and their respective roles or lack thereof in the conspiracy.  Many of the Defendants intend to assert a defense in this case that they withdrew from the conspiracy before the statute of limitations began to run, or at least at some point before the end of the conspiracy term alleged

---

[30] The government has submitted a disc containing hundreds of marked email exhibits.  Gov't Ex. 1. However, the government failed to identify any particular exhibit or statement it intends to offer as coconspirator testimony.  The Court declines to comb through this record to divine which statements the government intends to offer.

[31] *Alcorta*, 853 F.3d at 1138–39 (concluding that after trial began, the district court's ruling that the many admitted statements were made in furtherance of the conspiracy was not erroneous for failure "to go through each particular statement and repeat its finding.").

by the government.  Defendants' cross-examinations of Agent Ramana largely focused on facts about withdrawal, and her knowledge of when Defendants' overt acts occurred.  Generally speaking, the strength of the government's evidence on timing will be important for purposes of determining withdrawal and statute-of-limitations defenses at trial, but it does not necessarily restrict the Court's ability to make predicate findings on the admissibility of coconspirator testimony.

Withdrawal is an affirmative defense and the defendant bears the burden of proving it.[32] As the Tenth Circuit has explained:

> The defendant has the burden to show withdrawal by proving he or she "attempt[ed] to undo the wrong that has been done in one of two ways": (1) "give authorities information with sufficient particularity to enable the authorities to take some action to end the conspiracy"; or (2) "communicate his [or her] withdrawal directly to his [or her] coconspirators in a manner that reasonably and effectively notifies the conspirators that he [or she] will no longer be included in the conspiracy."  The second method "requires more than implied dissociation.  It must be sufficiently clear and delivered to those with authority in the conspiracy such that a jury could conclude that it was reasonably calculated to make the dissociation known to the organization."[33]

Two Defendants submitted evidence in support of withdrawal and argue that statements made after they withdrew cannot be used against them.  First, Jenkins supplemented the record after the hearing closed with evidence that he withdrew from the conspiracy on a specific date— a recording of Royall Jenkins' speech on March 30, 2008, informing his congregation that he intends to remove Defendant Jenkins from UNOI the following day.[34]  Agent Ramana testified at

---

[32] *Smith v. United States*, 568 U.S. 106, 110–14 (2013).

[33] *United States v. Morgan*, 748 F.3d 1024, 1037 (10th Cir. 2014) (alterations in original) (quoting *United States v. Randall*, 661 F.3d 1291, 1294–95 (2011)).

[34] Doc. 383 at 2 (providing the following Soundcloud link: https://soundcloud.com/user-709813292/2008-3-30-clearing-your-record-kansas-city-ks).

the *James* hearing that Jenkins had minimal interaction with the organization after that date.  The Court cannot conclude based on this evidence that Jenkins has met his burden of showing withdrawal.  This evidence does not include any statement or conduct by Jenkins that demonstrates he meets the standards required to show withdrawal.

Rassoul submitted his own affidavit at the hearing that he withdrew from UNOI in August or September of 2011.[35]  But Agent Ramana testified that Rassoul and Majeed took over the organization from Royall Jenkins at that time, including continuing with punishments for members who were considered to have broken rules.  She acknowledged that they began compensating some of the workers when they took over, but testified that they did not compensate everyone and, to the extent certain workers were compensated, it was not consistent.  Thus, Rassoul has not met his burden of showing that he withdrew from the conspiracy in August or September 2011.

## IV.     Conclusion

In sum, the Court finds that the government has met its burden of showing by a preponderance of the evidence that there was an ongoing conspiracy, and the members thereof.  The Court provisionally admits statements by coconspirators within the categories of statements identified by the government.  The Court finds that these categories of statements are made in furtherance of the conspiracy.

The Court cannot find on this record that Jenkins or Rassoul withdrew from the conspiracy on a date certain that would enable the Court to give the kind of specific limiting instruction requested by Jenkins.  To the extent the evidence at trial demonstrates withdrawal, a limiting instruction will be appropriate to cure any prejudice due to coconspirator testimony after

---

[35] Rassoul Ex. 1 ¶¶ 17–18.

a particular Defendant withdrew, but the Court declines to rule definitively on the contents of such an instruction at this stage.  Therefore, Jenkins' request for a limiting instruction based on an April 1, 2008 withdrawal date is denied without prejudice.

**IT IS SO ORDERED.**

Dated: July 30, 2024

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE